**PLAINSMAN TRADING COMPANY et al., Petitioners,**

v.

**Thomas W. CREWS, Sr. and Dorothy Crews, Respondents.**

No. 94–0641.

Supreme Court of Texas.

Argued January 4, 1995.

Decided May 11, 1995.

Rehearing Overruled June 8, 1995.

John H. Burris, Alice, Timothy Patton, San Antonio, Kenneth R. Hannam, Corpus Christi, for petitioner.

J. W. Cooper, Jr., J.A. Canales, Corpus Christi, for respondents.

HIGHTOWER, Justice, delivered the opinion of the Court, in which PHILLIPS, C.J., and GONZALEZ, HECHT, CORNYN, ENOCH, SPECTOR, and OWEN, JJ., join.

In this declaratory judgment action, we must decide whether the surface destruction test applies to a non-participating royalty interest created prior to June 8, 1983. Because a non-participating royalty is an interest in property which is carved only from the mineral estate, and because the disputed uranium in this case belongs to the surface owner by application of the surface destruction test,[1] we affirm the judgment of the court of appeals.

The Richardson Heirs are successors in interest to a non-participating royalty reserved in a deed dated October 21, 1949. Thomas and Dorothy Crews are the grantees of the surface estate and an undivided one half of the mineral estate by a deed dated March 14, 1963. Plainsman is the sole successor in interest to the remaining "undivided one-half of the minerals in and under said land." On August 27, 1987, the Crewses executed a mineral lease to URI, Inc. This action was brought to determine the interests of the various parties in the uranium which URI intends to extract. It is undisputed that the uranium is less than 200 feet below the surface. After trial to a jury, judgment was rendered in favor of Thomas and Dorothy Crews. Plainsman and the Richardson Heirs appealed and the court of appeals affirmed. 875 S.W.2d 416. We affirm the judgment of the court of appeals.

## I.

The Richardson Heirs argue that whether the disputed uranium belongs to the Crewses as surface owners, or whether it is owned by by the Crewses and Plainsman as tenants in common of the mineral estate, it is burdened by the heirs' non-participating royalty interest. Even though their interest was created prior to June 8, 1983 when this court prospectively abandoned the "surface destruction test" in *Moser v. United States Steel Corporation*, 676 S.W.2d 99 (Tex.1984), they argue that the surface destruction test should not apply when construing non-participating royalty interests. They reason that the transfer of such an interest, even in "minerals" which *are* extracted by destroying the surface, carries with it no potential that the surface owner's enjoyment will be disturbed by the non-participating royalty owners who have no independent right to explore for or produce the minerals. The Crewses argue that a non-participating royalty interest, with no further qualification, is a property interest which can only be carved out of the mineral estate. Since title to the uranium in this case resides in the surface owner, they reason that the uranium is not subject to any royalty interest carved from the mineral estate. We agree with the Crewses.

## II.

In order to fully understand the argument of the Richardson Heirs and our holding in this case, one must know something of the history behind the surface destruction test. It has historically been held that the mineral estate is dominant, meaning, the mineral owner has the right to use so much of the surface as may be reasonably necessary to enjoy his mineral estate. *See Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex.1971); *Harris v. Currie*, 142 Tex. 93, 176 S.W.2d 302, 305 (1944); *Cowan v. Hardeman*, 26 Tex. 217, 222 (1862) (noting that these rights existed both in Spanish civil and English common law). Practically speaking, the mineral estate would be wholly worthless if the owner

---

1. Because all of the conveyances material to this dispute were executed prior to June 8, 1983 when this court prospectively abandoned the surface destruction test, the surface destruction test is applicable to determine ownership rights in the uranium in question as between the surface and mineral owners generally. *See Friedman v. Texaco*, 691 S.W.2d 586 (Tex.1985). This case involves the application of that test to royalty interests specifically.

of the minerals could not enter upon the land in order to explore for and extract them. *Harris,* 176 S.W.2d at 305. Thus, the conveyance of the mineral fee, separate and apart from the surface, creates potentially conflicting uses of the surface by the surface owner and the mineral owner.

■ Just as the mineral estate would be worthless absent a right to make use of the surface, the surface estate would be worthless if the reasonable use granted to the mineral owner encompassed the right to consume or deplete the surface. Thus, in *Acker v. Guinn,* 464 S.W.2d 348 (Tex.1971), this court created the presumption that a surface owner conveying "minerals" did not intend to convey the right to destroy his interest. Likewise, we presumed the grantee of a surface estate from which "minerals" are reserved did not intend to accept an estate with little or no value. We followed the rule that where a deed conveyed or reserved minerals generally, it did not convey or reserve any substance the extraction of which, by any reasonable means, would consume or deplete the surface. *See Reed v. Wylie,* 597 S.W.2d 743 (1980) (Reed II).

In applying this rule, the court did not seek to divine the *specific* intent of the parties concerning the ownership of any particular substance; rather, the aim was to ascertain the general intent of the parties, granting to each the ownership of the physical elements necessary to the reasonable enjoyment of his interest, *Acker,* 464 S.W.2d at 352 (quoting Kuntz, *The Law Relating to Oil and Gas in Wyoming,* 3 Wyo.L.J. 107, 112 (1949)). *See also* G. Jefferson Mason, Comment, *Surface or Mineral: A Single Test,* 23 Baylor L.Rev. 407, 414–15 (1971). In fact, the court recognized in *Reed v. Wylie,* 554 S.W.2d 169, 171 (Tex.1977) (*Reed I* ) that disputes of this type rarely involve substances about which the parties had *any* specific intent whatsoever; rather, they are inclined to concern unnamed minerals which later become very valuable, the subsequent controversy determining only who will be enriched by the extraction of the substance. *Id.*

■ Thus, the "surface destruction test" had its genesis in protecting surface owners from the uncompensated destruction of their interest by the exercise of the exploration and extraction rights of the "mineral" owner. A non-participating royalty interest, however, is *non-possessory* in that it does not entitle its owner to produce the minerals himself. It merely entitles its owner to a share of the production proceeds, free of the expenses of exploration and production. *See generally Arnold v. Ashbel Smith Land Co.,* 307 S.W.2d 818, 825 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). The Richardson Heirs, by virtue of their non-participatory interest, are not entitled to come onto the land for *any purpose,* let alone to consume or deplete the surface in the pursuit of a mineral. *See* Lee Jones, *Non-participating Royalty,* 26 Tex.L.Rev. 569, 570 n. 4 (1948). Thus, they argue that the reservation of their interest did not become "ambiguous" by creating the potential that the Crewses would suffer uncompensated damage to the surface at their hands. The term "mineral," they argue, ought to be construed according to its ordinary meaning to include uranium. We disagree.

■ The argument advanced by the Richardson Heirs focuses on the meaning of one term—"mineral." However, when construing a conveyance, the court does not look at terms in isolation; rather, it must give effect to all parts of the conveyance and construe the document as a whole. *See Altman v. Blake,* 712 S.W.2d 117 (Tex.1986); *Cockrell v. Texas Gulf Sulphur Co.,* 157 Tex. 10, 299 S.W.2d 672 (1956). In stretching the meaning of "mineral" to include substances which likely never entered the minds of the parties to the conveyance, the Richardson Heirs have ignored the specialized meaning of the words "non-participating royalty interest," the very interest which the conveyance created.

■ The words "non-participating royalty interest" long ago acquired a well understood meaning. *See* Jones, 26 Tex.L.Rev. at 569. A non-participating royalty interest

> ... may be defined as an interest in the gross production of oil, gas, and other minerals *carved out of the mineral fee estate* as a free royalty, which does not carry

with it the right to participate in the execution of, the bonus payable for, or the delay rentals to accrue under, oil, gas, and mineral leases executed by the owner of the mineral fee estate.

*Id.* (emphasis added). *See also Benge v. Scharbauer,* 152 Tex. 447, 259 S.W.2d 166, 167–68 (1953) (enumerating the various attributes of the mineral estate); *Arnold,* 307 S.W.2d at 824 (noting that non-participating royalty owner has no right to participate in "leases of the mineral estate *to which the royalty is appurtenant*") (emphasis added). If a non-participating royalty is carved from the *mineral fee,* it cannot attach to a substance, mineral or not, which is *not a part* of the mineral *fee estate.* While this court has, in the past, changed the method for determining the limits of the mineral fee,[2] one principle should be immutable: a non-participating royalty is an interest in the mineral fee, however large or small that fee is and regardless of how its limits are determined. This is not to say that surface owners such as the Crewses *could not,* by the use of express language, create a non-participating royalty interest in some valuable substance belonging to the surface owners which under other definitional constructs would be called a mineral. We only hold that where, as here, there is no specific indication of an intent to do so, this court *will not* alter an unambiguous reservation and do it for them.

### III.

Next we must decide whether the manner in which the surface destruction test was submitted in this case necessitates a reversal. Plainsman argues that the trial court should have submitted two questions to the jury concerning whether open pit mining and solution mining were "reasonable." They maintain that the issue as submitted confused the jury. We disagree.

 Broad form submission is now mandated by our Rules of Civil Procedure whenever feasible. *See* Tex.R.Civ.P. 277; *Texas Dep't of Human Services v. E.B.,* 802 S.W.2d 647 (Tex.1990). The court is required to submit such questions, definitions and instructions "as shall be proper to enable

the jury to render a verdict." Tex.R.Civ.P. 277. In the instant case, the jury was asked:

Do you find from a preponderance of the evidence that the uranium located on the Tom Crews Ranch is located within 200 feet or less of the surface and that any reasonable method of extracting and producing the uranium under the Tom Crews Ranch available on March 14, 1963 or at any time thereafter would consume, deplete or destroy the surface of the Tom Crews Ranch?

Thus, the controlling questions were asked. The jury was required to determine the uranium's proximity to the surface and whether any reasonable method of extraction from the date of the conveyance to the time of trial would consume, deplete or destroy the surface. *Reed v. Wylie,* 597 S.W.2d 743, 747 (Tex.1980) (Reed II). Such a submission is neither confusing nor unfeasible.

 Plainsman next complains that the trial court erred in allowing the jury to determine whether or not the uranium was within 200 feet of the surface because the parties had stipulated to this fact. While we acknowledge that a trial court should only submit contested fact issues to the jury, we fail to see how this submission injures Plainsman. If the jury had answered the broad form question "no" based upon its finding (contrary to the stipulation) that the uranium was further than 200 feet from the surface, Plainsman would have won the case because there is evidence either way concerning the "reasonable method" issue. In order to be reversible, error must amount to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b). We find no such error here.

 Plainsman next complains that the trial court should not have instructed the jury that "to be 'reasonable,' a method does not have to be the best technical method or the most economical method, nor does it mean that the uranium must be removed by that method." We disagree.

---

2. *See Moser v. U.S. Steel Corp.,* 676 S.W.2d 99 (Tex.1984).

Although the instruction goes counter to Plainsman's evidentiary argument that URI intended to extract the uranium on the Tom Crews Ranch by solution mining rather than strip mining, Plainsman does not demonstrate how the instruction is a misstatement of the law. The trial court has wide discretion to determine sufficiency of definitions and instructions. *Texas Department of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 836 (Tex.1986). Although the instruction might incidentally comment on the evidence, a court's charge is not objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence when it is properly a part of an instruction or definition. Tex.R.Civ.P. 277. It is likewise not the kind of surplus instruction in a standardized charge which is calculated to nudge the jury in favor of one party. *See Acord v. General Motors Corp.*, 669 S.W.2d 111 (Tex.1984); *Lemos v. Montez*, 680 S.W.2d 798 (Tex.1984).

■ Plainsman next complains that the trial court should have granted it an instruction allowing the jury to consider the environmental effect of a method of extraction in determining whether it is reasonable. We believe that submission of the instruction in the form requested by Plainsman would have been error. Plainsman's requested instruction would have allowed the jury to consider whether the surface is destroyed in determining whether a method of extraction is reasonable.[3] The inquiry of whether a method of extraction is reasonable from the producer's point of view is entirely separate from whether the surface will be destroyed. Plainsman's tendered instruction would have allowed the jury to find a method of extraction to be unreasonable *because* the surface is destroyed, meaning the surface owners (who should win under the surface destruction test) potentially lose by carrying their

burden of proof. The requested instruction incorrectly stated the law and was thus properly refused. *See* Tex.R.Civ.P. 278 (requiring that requested questions, definitions and instructions be tendered to the court in substantially correct form).

■ Finally, Plainsman complains that the trial court erred by instructing the jury that the surface is consumed, depleted or destroyed if "use of the surface soil is affected to such a degree that the utility of such land surface for farming, grazing, timber production or other beneficial use is destroyed or substantially impaired." Plainsman objects to the use of the word "impaired" on the grounds that even a fence post or roadway impairs the use of the surface without destroying it; however, the instruction as submitted required the jury to find "substantial impairment." The origin of this language is *Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex.1971) in which the court said:

> It is not ordinarily contemplated however, that the utility of the surface for agricultural or grazing purposes will be destroyed or substantially impaired. Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of "minerals" or "mineral rights" should not be construed to include a substance that must be removed by methods that will in effect consume or deplete the surface estate.

*Id.* The instruction as given is also functionally equivalent to language requested by Plainsman.[4] When read as a whole, we do not believe the charge would allow the jury to improperly find that fence posts or other minor manifestations of mining activity consumed, depleted, or destroyed the surface. Thus, assuming without deciding that the instruction was not required in order to enable the jury to reach its verdict, we find no reversible error in its submission.

---

3. The requested instruction reads:

> In determining whether or not a method is reasonable, you may take into consideration whether or not it (1) destroys the surface of the land; (2) is economically feasible; (3) is technically feasible; (4) is environmentally safe; (5) is practical.

4. Plainsman requested the following definition:

> "Substantially destroy, consume, or deplete the surface of the Crews Ranch" means damage or change to the surface of the land to such an important and large degree to make impracticable the future for agricultural and grazing purposes.

Therefore, we affirm the judgment of the court of appeals. To the extent that it conflicts with this opinion, we disapprove the holding of *Martin v. Schneider,* 622 S.W.2d 620 (Tex.App.—Corpus Christi 1981, no writ).

GAMMAGE, Justice, dissenting.

I respectfully dissent. The majority unnecessarily perpetuates the "surface destruction test" and all its contortions when there is no reason to refuse to give the words of the conveyance their plain meaning.

In 1949 M.I. Richardson granted the Richardson heirs their nonparticipating royalty interest. At that time he owned both the surface and mineral estates. The words he used were "all ... other minerals in, under and that may be produced from the ... land." The grantor could grant royalty from both the surface estate and the mineral estate. He was not limited to granting something only "out of" the mineral estate because that was all he owned; he owned both the surface and the minerals. The court should give the words their natural and ordinary meaning, and recognize a royalty interest in surface and mineral estate "minerals." *Moser v. U.S. Steel Corp.,* 676 S.W.2d 99, 102 (Tex.1984).

The surface destruction test does not apply to a nonparticipating royalty interest. *See Martin v. Schneider,* 622 S.W.2d 620, 622 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). The surface destruction test is merely a rule of construction for ambiguous conveyances. *Schwarz v. State,* 703 S.W.2d 187, 189 (Tex.1986). The test only applies if there is doubt whether the parties to the instrument intended for the holder of the mineral rights to have the right to acquire the minerals by destroying the surface owned by the other. *Martin,* 622 S.W.2d at 621–22. Because the Richardson heirs assert only a nonparticipating royalty interest, which does not vest them with a right to disturb the surface estate owned by the Crews, the surface destruction test does not apply. If the surface owners mine surface minerals, the Richardson heirs should collect their royalties from them. If the mineral estate owners produce subsurface minerals, such as oil or gas, the Richardson heirs should likewise collect royalties from them. Surface destruction is simply irrelevant.

The majority fails to distinguish between royalties that are created in leases and royalties that are granted or reserved without an accompanying lease. Lease-created royalties raise a question of intent about coverage of surface mining whereas the others do not. If the royalty grant is not derivative of a traditional mineral estate interest, there is no reason to limit it. If ownership of the surface and mineral estates is split, the owner of the surface estate needs protection from destruction of the surface by the owner of the mineral estate. When the same party owns both estates and the only other interest is a nonparticipating royalty interest, the rationale supporting the surface destruction test vanishes.

Applying the surface destruction test to non-derivative royalty interests will create confusion in land titles because ownership of royalty interests will not be determinable from deed records alone. *See Moser,* 676 S.W.2d at 101. Avoiding continued title uncertainty was a principal reason this Court prospectively abandoned the surface destruction test for conveyances of mineral estates. *See Gifford–Hill & Co. v. Wise County Appraisal Dist.,* 827 S.W.2d 811, 815 (Tex.1991).

The surface destruction test should be applied only where its underlying policy is furthered. It applies to royalty interests in leases and to royalty interests created by owners of mineral estates, but not to royalty interests created by owners of surface estates or of both surface and mineral estates. Applying the surface destruction test in this manner is consistent with the policy behind the test. We should minimize the number of situations in which land interest owners must resort to factual determinations of the depth of minerals, etc., to determine ownership because "Determining the ownership of minerals in this manner has resulted in title uncertainty." *Moser,* 676 S.W.2d at 101. We need fewer, not more applications of the surface destruction test. Today the majority takes a giant step backward from using common sense to give words their plain (and

probable intended) meaning, and decreases title certainty in the process. I dissent.