**BAYLOR UNIVERSITY, Petitioner,**

v.

**Betty A. COLEY, Respondent.**

**No. 04–0916.**

Supreme Court of Texas.

Argued Oct. 19, 2005.

Decided April 20, 2007.

Roy L. Barrett, Stuart Smith, and John Andrew Powell, Naman, Howell, Smith & Lee, L.L.P., Waco, for Petitioner.

LaNelle L. McNamara, LaNelle L. McNamara, P.C., Waco, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice BRISTER, Justice MEDINA, Justice GREEN, and Justice WILLETT joined.

Respondent Betty A. Coley contends that her former employer, petitioner Baylor University, by reassigning her responsibilities to others and thus effectively demoting her, breached her contract and forced her to resign from her tenured faculty position. The trial court rendered judgment for Baylor based on the jury's failure to find that Coley had been constructively discharged, defined in the charge as "mak[ing] conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign." The court of appeals reversed and remanded, holding that the jury should have been asked whether Baylor constructively discharged Coley by "'mak[ing] a material change in the position to which [she] was entitled under the contract.'" [1] We conclude that Coley presented no evidence Baylor breached her contract and that the jury was properly charged on constructive discharge, and we therefore reverse and render judgment for Baylor.

---

**1.** 147 S.W.3d 567, 571 (Tex.App.-Waco 2004) (quoting *Kramer v. Wolf Cigar Stores Co.*, 99 Tex. 597, 91 S.W. 775, 777 (1906)).

Baylor hired Coley in 1972 as a librarian in one of its libraries, the Armstrong Browning Library (the "ABL" or "Library"), and in 1981 informed her by letter that she had been granted tenure on the faculty of the Library. The evidence shows that Coley was given the rank of "Assistant Professor". According to Baylor's personnel policy manual:

> Tenure means assurance to an experienced faculty member that he/she may expect to continue in his/her academic position unless adequate cause for dismissal is demonstrated in a fair hearing, following established procedures of due process.

In her brief in this Court, Coley tells us that she was responsible for acquiring and preserving materials, presenting the collection to students and others inside the Library as well as outside, participating in professional associations, and doing scholarly research. When the director of the Library left in 1985, Coley applied for the position and was allowed to assume some of its duties until Dr. Roger Brooks was hired as director in 1987.

Coley's relationship with Brooks was discordant. Brooks thought her to be abrasive and difficult to work with. Dissatisfied with her performance, he reassigned some of her responsibilities to himself or her co-workers. In April 1993, while Coley was on sabbatical, Brooks wrote to his superior, Dr. Avery Sharp, the University Librarian, detailing Coley's inadequacies. Two weeks later Sharp, in turn, wrote to Coley as follows:

> It appears that there is a history of low quantity and quality of work, self-serving behavior, rude and insulting behavior toward ABL staff and members of the public, excessive absences year after year, repeated angry outbursts, public criticism of the Director, the former University Librarian, the central administration and the University, inadequate ability to accept supervision, poor judgment in materials purchasing recommendations, attempts to convince dealers and booksellers that you are an approved purchasing agent for the Library, and inability or unwillingness to complete assigned projects.

Sharp informed Coley that she would not be terminated but would be given an opportunity to improve. He also told her that she would not be given a raise in salary or a promotion, and that her responsibilities, like those of other Library staff, would be reviewed. "Effective immediately and continuing indefinitely," he concluded, "you have no supervisory responsibilities, no public service responsibilities, and no budgetary responsibilities." It is not clear whether any of these were part of her responsibilities when she first received tenure, or whether she had taken them on while the director's position remained vacant.

Coley complained to Baylor's President, Dr. Herbert H. Reynolds, who told her she could pursue a formal hearing with the University Grievance Committee, but she never did. In August 1993, Brooks changed the title of Coley's position from "Librarian" to "Research Librarian" and met with her to discuss her duties, which they both agreed were "very important" to the operation of the Library. But in October, she wrote Sharp:

> During the past six years my relationship with Dr. Brooks has deteriorated to such an extent that I believe he is now trying to remove me from the Library. As you know, he has demoted me to "research librarian" and I am now subject to monthly reports to you. He has stripped me of almost every responsibility I once had in the Library. . . .
>
> I believe his reasons for doing this are caused by a strong personality conflict

between us, rather than the result of misdemeanors on my part.

She concluded that she was "anxious not to cause trouble" and that she "wish[ed] to continue working here." When Sharp responded that she should send a copy of her letter to Brooks, she replied:

> I have not sent a copy to Dr. Brooks because I am anxious to avoid further confrontation. Things have been much better recently in the Library, and I wish them to continue. My letter was intended solely to put on record my views of the events of the past few months.

Two weeks later Brooks issued a memo stating that Coley had been named "Research Librarian" and would be

> responsible for conducting research on topics pertaining to the collection's resources, the cataloging of newly acquired non-print and non-manuscript items, the cataloging of archival material pertaining to the collection's early history, and the maintenance of the clippings file.

This was the position he had discussed with her in August.

Coley signed a new one-year contract with Baylor dated April 15, 1994, continuing her at the academic rank of "Assistant Professor" for the 1994–1995 academic year. Although all of Coley's claims accrued prior to the 1994–1995 academic year, none of the annual contracts governing prior years were introduced into evidence; the 1994–1995 contract does not govern Coley's claims, but is at best representative of the prior annual contracts. Regardless, neither the 1994–1995 contract nor the 1981 letter granting Coley tenure contained any description of her position or responsibilities. The 1994–1995 contract stated that the contract, a referenced attachment, and the Baylor University Personnel Policy Manual "contain the entire agreement between the faculty member and the University". Neither the attachment nor the complete manual are in the record; the only portion of the manual regarding the terms of tenure is quoted above in pertinent part.

In May, Coley told Brooks that she might need to take disability leave. Brooks passed her request on to Sharp, who wrote Coley that he would need a statement from her physician regarding her diagnosis and prognosis. In July, Coley replied that

> the question is now moot. You will be pleased to learn that I am planning to take early retirement from Baylor, not because I have finally capitulated to the decade of constructive dismissal tactics and harassment I have suffered, culminating last year during my sabbatical in your letter of 28 April demoting me from my position as Librarian ... that I had held for twenty-one years, and placing me on what amounts to punitive probation, but because I am to be married and live in Vancouver, British Columbia.

A few days later she wrote Brooks to formally request retirement:

> You will appreciate that I have mixed emotions about leaving the ABL, which for the past twenty-two years has been the center of my professional and, indeed, much of my personal life. However, in view of the pressures and stress I have experienced over the past decade, especially since my sabbatical leave in 1993, I can only anticipate with relief a happy and productive future in my new situation and environment. I have always conducted myself in the best interests of the ABL, and the Library will always have a special place in my affection.

I am also ambivalent about severing my long association with Baylor University, which has treated me well in so many ways. I only regret that because I was denied promotion to the rank of Associate Professor, I am ineligible for Emeritus status.

\* \* \*

Thank you for whatever role you may have played in making [arrangements for my retirement] possible. I should also like to acknowledge the other kindnesses you have shown me during your tenure as Director of ABL.

Nine months after she retired, in April 1995, Coley sued Baylor, Brooks, and Sharp. She alleged that the defendants

circumvented Coley's rights and privileges as a tenured faculty member, and undertook to threaten, intimidate, and harass Coley in an effort to force her to leave her employment; and, finally, when she did not abandon her position, they effectively removed her from her faculty position through the guise of "redefinition" .... Ultimately, the unreasonable and harassing conduct of Defendants ... did force Coley to take early retirement from the clerical position that she was forced to assume after her faculty and research position, with the academic rights attendant thereto, was redefined ....

This " 'defacto removal' of [her] vested tenure rights", she asserted, "constituted a material and substantial breach of the contractual rights conferred on Coley and other tenured faculty at Baylor University."

At the close of the evidence, the trial court refused Coley's requests that the jury be asked whether Baylor breached her tenure contract and that they be instructed

that if you find and believe from the evidence that the change in Betty Coley's duties, as ordered by Baylor's agents Dr. Roger Brooks and Dr. Avery Sharp, required Betty Coley to take a subordinate position, or one substantially different in its work and duties from the position for which she was tenured, then you should find that Betty Coley was constructively and wrongfully discharged from her tenured position.

Instead, the court gave the jury the following question and instruction on liability:

Did Baylor University constructively discharge Betty Coley?

An employee is considered to have been discharged when an employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign.

The jury answered "no". The trial court rendered judgment on the verdict for Baylor, and Coley appealed, but only as to Baylor.

The court of appeals rejected Coley's contention that she was entitled to a jury question on breach of contract, noting that she "states in her brief that her theory [of recovery] is that Baylor breached her contract by constructively discharging her" and "agree[ing] with Baylor that the controlling issue is whether Baylor constructively discharged Coley." [2] But the court held that the jury should have been given Coley's requested instruction on constructive discharge.[3] That instruction, the court concluded, reflects "a correct statement of law with regard to an employer's rights under an employment contract to

**2.** 147 S.W.3d at 571.

**3.** *Id.*

modify an employee's position", and the trial court's instruction did not.[4]

The court relied on our decision in *Kramer v. Wolf Cigar Stores Co.*[5] There, one Kramer agreed in writing " 'to faithfully and diligently act as general manager of the Dallas stores of the Union Cigar Stores Company, with headquarters at Dallas, performing such duties as are usually entailed upon a general manager under like circumstances' ".[6] Kramer agreed to the title "chief clerk" of Union Cigar's only Dallas store, and when two smaller stores were added, he managed all three.[7] But when Union Cigar instructed him to move to the smallest of the three stores, which he believed could not serve as headquarters for the business, he refused and was discharged.[8] He sued for breach of contract, alleging that Union Cigar had in effect removed him as general manager and reduced him to little more than a tobacco salesman.[9] Union Cigar answered that Kramer had only been transferred, not demoted. We held that the evidence was "sufficient to present the issue whether or not the defendant broke the contract by requiring of plaintiff the performance of duties substantially different from those which he had agreed to perform".[10]

■ Like Kramer, Coley alleges that she was demoted in breach of her contract. But while there is evidence that her responsibilities were altered, there is no evidence that Baylor ever required her to perform any job other than Assistant Professor, the rank at which she was tenured and which was specified in her last annual contract. As previously noted, Coley did not introduce into evidence any contract with Baylor that specified her functions, either in its terms or with reference to any other materials. Nor does the 1981 letter granting her tenure specify her functions. Coley instead points to President Reynolds's testimony that a tenured faculty member at Baylor would be entitled to continue to do the "general kinds of things" in his field that he was doing when he was given tenure. But there is no evidence that Coley did not continue to do the "general kinds of things" she had done when given tenure. Over the years, her work changed as she assumed for awhile, then relinquished, some of the duties of director, and then was assigned different duties as positions in the Library were redefined. Neither her tenure letter nor her 1994–1995 academic year contract refer to her position as "Librarian", and her new title, "Research Librarian", was not significantly different. She agreed with Brooks that her assignments as "Research Librarian" were "very important" to the operation of the Library. Even if her work varied substantially over time and in the end was more clerical than she desired, there is no evidence that it was not the work of an Assistant Professor. On the contrary, the evidence establishes that, in the words of Baylor's personnel policy manual, she "continue[d] in [her] academic position".

■ Unlike Kramer, Coley also alleges another, different breach of contract: that she was constructively discharged— that is, that she was in effect terminated without due process by being forced to resign. This, too, would be a breach of her

---

4. *Id.*

5. 99 Tex. 597, 91 S.W. 775 (1906).

6. *Id.* at 775.

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.*

tenure contract, but it cannot be proved merely by a material change in job assignments. Rather, constructive discharge has recently been defined by the United States Supreme Court in *Pennsylvania State Police v. Suders* as "an employee's reasonable decision to resign because of unendurable working conditions".[11] Here, the trial court's jury instruction was taken verbatim from PJC 107.10 of *Texas Pattern Jury Charges*, which is derived from the *Suders* opinion.[12] It correctly describes constructive discharge. Coley's requested instruction confused two different breaches of an employment contract, one when the employee's duties or responsibilities are changed in violation of a contract, and the other when intolerable working conditions force the employee to resign even though termination was not contractually permitted. In essence, the instruction would have told the jury that a material change in work assignments forces resignation. Not surprisingly, Coley offers no authority for this proposition. It is simply incorrect. The court of appeals' conclusion that constructive discharge is differently defined, depending on whether employment is by contract or at-will, is based on a misreading of *Kramer* and is also incorrect.

The concurring opinion finds it unnecessary to address Coley's argument that her requested instruction should have been given because, as Baylor contends, the instruction assumed a disputed fact and therefore was not worded substantially correctly.[13] The disputed fact was whether Coley had tenure in a *field*, such as library science, or in a particular *position* of employment, such as Librarian of the ABL. Baylor and the concurrence argue

that because that fact was disputed, and because the requested instruction refers only to a tenured "position", the requested instruction "assumed the truth of a material controverted fact".[14] We disagree. This nearly imperceptible distinction between field and position, as related to this case, was but a speck of disagreement between the parties; the heart of the constructive discharge claim was whether Baylor's change in Coley's duties effectively forced her to resign. The main issue was what degree of change is necessary to prove constructive discharge: a move to "a subordinate position, or one substantially different in its work and duties", as Coley requested the jury be instructed, or "conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign", as the court instructed the jury.

In rejecting the argument that Coley did not preserve error, the court of appeals quoted our statement in *State Department of Highways & Public Transportation v. Payne*:

> There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle.[15]

Coley's requested instruction presented the principal legal issue of constructive discharge squarely to the trial court, and the court resolved it. Nothing in Coley's

---

11. 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).

12. State Bar of Tex., Texas Pattern Jury Charges—Business, Consumer, Insurance & Employment PJC 107.10 & cmt. (2006).

13. *Post* at 607.

14. *Post* at 607.

15. 838 S.W.2d 235, 241 (Tex.1992).

use of the word "position" rather than the word "field" misled the trial court or interfered in any way with its legal decision. Using either word, the instruction was wrong for purposes of Coley's constructive discharge claim. Coley is entitled to have the trial court's decision reviewed on appeal.

We need not decide whether there was any evidence Coley was constructively discharged to support submission of the issue to the jury since the jury answered the question "no". There is no evidence that Baylor breached Coley's employment contract. Accordingly, the judgment of the court of appeals is reversed and judgment is rendered that Coley take nothing.

Justice JOHNSON filed a concurring opinion, in which Justice WAINWRIGHT joined.

Justice JOHNSON, joined by Justice WAINWRIGHT, concurring.

I concur in the Court's judgment.

By its first issue Baylor challenges the court of appeals' determination that Coley, who had the burden to plead, prove, and obtain findings on her cause of action, properly preserved jury charge error when the proposed instruction she requested, which the trial court refused, was "wrong" as determined by this Court. Citing Texas Rule of Civil Procedure 278, *Union Pacific Railroad Co. v. Williams,* 85 S.W.3d 162, 169–70 (Tex.2002) and *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 791 (Tex.1995), Baylor questions whether Coley preserved error as to the trial court's proposed jury instruction by "bring[ing] to the trial court's attention" her contention that she disagreed with the proposed instruction and timely submitting a proposed instruction which Baylor contends was not substantially correct because it directly commented on the weight of the evidence.

In *Union Pacific Railroad Company* this Court considered whether the trial court erred by refusing to give a proposed instruction on foreseeability in a Federal Employers' Liability Act claim. We "granted Union Pacific's petition for review to determine: (1) whether Union Pacific was entitled to a jury instruction on foreseeability as it relates to duty; and (2) if so, whether Union Pacific preserved its complaint that the trial court erred in refusing to submit Union Pacific's proposed instruction." 85 S.W.3d at 165. We first analyzed whether foreseeability was properly a part of the jury's consideration when material facts involving foreseeability were disputed. We held that it was, and that "when the evidence about foreseeability as it relates to the railroad's duty is disputed, the trial court should instruct the jury about this element so it can resolve the factual issue." *Id.* at 169. Then, citing Rule 278, we said "[u]nder our procedural rules, a party must submit a written, 'substantially correct' instruction to the trial court to complain on appeal that the trial court erroneously refused the instruction." *Id.* We went on to hold that "Union Pacific's request preserved error on its jury charge complaint, because the request was substantially correct." *Id.* at 170.

In *Plainsman Trading Company* we considered a situation similar to that before us now. Plainsman urged that the trial court erred in refusing to submit what we determined was an erroneous instruction. The question of preservation of error was not addressed. Instead, we referenced Rule 278 in our determination: "The requested instruction incorrectly stated the law and was thus properly refused. *See* TEX.R. CIV. P. 278 (requiring that requested questions, definitions and instructions be tendered to the court in substantially correct form)." *Plainsman Trading Co.,* 898 S.W.2d at 791.

Our statement in *Union Pacific* referencing preservation of error could be read as implying that a requested instruction must be substantially correct for error to be preserved for appellate review. Rule 278 provides, as relevant here, that "[f]ailure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." In regard to error preservation, Rule 278 must be read in conjunction with the other rules of civil procedure. Rule 272 requires that the proposed jury charge be given in writing to the parties or their attorneys with a reasonable time given for them to examine and present objections before the charge is read to the jury. Rule 272 provides that "[a]ll objections not so presented shall be considered as waived," but the rule does not require that the proposed instructions be substantially correct in order to avoid waiver. Because Coley timely presented her proposed instruction according to Rule 272, she preserved error for appellate review to determine if the instruction she presented is substantially correct and if so, whether the trial court erred in refusing to submit it. *See* TEX. R. CIV. P. 278; *Plainsman Trading Co.*, 898 S.W.2d at 791.

I agree with Baylor that the proposed instruction is not substantially correct because it assumes a controverted material fact and would have been a direct comment on the weight of the evidence. *See* TEX. R. CIV. P. 277 ("The court shall not in its charge comment directly on the weight of the evidence...."). A requested instruction that is affirmatively incorrect is not "substantially correct" as that term is used in Rule 278's requirement that proposed questions and instructions be substantially correct. *See Placencio v. Allied Indus. Int'l*, 724 S.W.2d 20, 21 (Tex.1987).

In *Placencio*, we considered proposed jury issues regarding a defensive theory. The trial court refused to submit the issues. The court of appeals reversed. In noting that the situation was controlled by language which is now found in Rule 278, we said:

This situation is controlled by TEX.R. CIV. P. 279 which provides that the trial court's failure to submit an issue shall not be a ground for reversal of the judgment unless the issue was tendered in substantially correct wording.... Issue No. 4, as tendered by Allied, is affirmatively incorrect because it assumes material controverted facts.... Because the issue as submitted by Allied assumed the truth of material controverted facts, it would have constituted a comment on the weight of the evidence.

. . .

If in spite of an implied comment, Allied's Issue No. 4 could be deemed "substantially correct," the trial court would have been forced to choose between (1) submitting it and possibly being reversed in the event of appeal by Placencio, or refusing it and being reversed in the event of appeal by Allied. We will not impose such a dilemma upon a trial judge. It was Allied's duty to present the judge with an issue that was not affirmatively incorrect. We hold that the trial court's refusal to submit an affirmatively incorrect issue does not justify reversal.

*Id.* at 21–22.

Coley claimed that Baylor constructively discharged her by materially and substantially breaching her employment contract. She claimed that when she was granted tenure she was tenured in the particular position of librarian and that Baylor *de facto* removed her tenure rights when it changed her title and duties. Baylor de-

nied that Coley was tenured in the particular position of librarian. According to Baylor, Coley was granted tenure only in a general field and her title change and modified duties did not erode her tenure, breach her employment contract, or result in a constructive discharge.

When the trial court's proposed charge was presented to the parties, Coley objected to the court's proposed constructive discharge instruction because it "does not fit the facts of this particular case, nor does it allow the plaintiff to even argue the facts of this particular case . . . and there is no instruction that relates to constructive discharge in a situation where there is a contract of the nature of the contract in this case." Coley then requested that the jury be instructed,

> either . . . conjointly with that instruction or separately from that instruction, to read as follows:

> > You are instructed that if you find and believe from the evidence that the change in Betty Coley's duties, as ordered by Baylor's agents, Dr. Roger Brooks and Dr. Avery Sharp, required Betty Coley to *take a subordinate position, or one substantially different in its work and duties from the position for which she was tenured,* then you should find that Betty Coley was constructively and wrongfully discharged from her *tenured position.* (emphasis added).

The trial judge refused to submit her requested instruction. The charge was submitted to the jury with the court's proposed Jury Question 1 and instruction as set out in the Court's opinion. The jury answered "No" to Question 1 and the trial court entered a take-nothing judgment. The court of appeals noted that Coley's proposed question and instruction "are not entirely correct," but reversed the judgment because the trial court's instruction on constructive discharge did not properly submit Coley's theory of recovery. 147 S.W.3d 567, 570–71.

Coley does not challenge the court of appeals' determination that the trial court did not err by refusing to submit her proposed breach of contract jury question. Examining both her proposed question and proposed instruction on constructive discharge, however, is illuminating as to her view of her case. Neither contained any standard for the jury to use in determining constructive discharge other than instructing the jury that if her change in duties required her to take a subordinate position or one substantially different in its work and duties from "the position for which she was tenured" then she was constructively discharged. But, both assumed that she was employed in a tenured "position" as opposed to a tenured "field." The question of tenured position versus tenured field was the source of serious disagreement between the parties during trial. Coley urged that she was employed and tenured in a particular librarian position with particular duties; Baylor asserted she was not. Coley contended that there was no factual dispute on the matter because Baylor's President admitted the school's policy was that tenure rights were for a *position.* Baylor countered by pointing to testimony from Baylor's President that tenure entitled an individual to certain kinds of responsibilities in a *field,* but it did not entitle someone to a certain *position.* Because there was evidence on both sides of the issue, both Coley's requested jury question and requested instruction which referred to Coley's "tenured position" assumed the truth of a material controverted fact and both were affirmatively incorrect.

The instruction Coley submitted contained more than the implied comments on the evidence addressed in *Placencio.* Her

requested instruction directly assumed a material controverted matter in her favor. If the trial court had given Coley's instruction, effectively the only question left for the jury would have been whether the uncontroverted change in her duties resulted in her taking a subordinate position or one substantially different in its work and duties from her position as librarian. If the jury so found, then the jury instruction required that the jury "should find that Betty Coley was constructively and wrongfully discharged from her tenured [librarian] position." Had the trial court given the instruction Coley requested, its effect is demonstrated by a jury argument which her counsel could have made based on the instruction:

> Ladies and gentlemen, we have been arguing with Baylor for many months now over whether Betty Coley was employed and tenured in her position as librarian, or whether Baylor employed and tenured her in an area or field so that they could move her from job to job. Now, at last, the judge has told Baylor, and you, in these instructions, that she was tenured in her position as librarian. So, when Baylor moved her from that tenured librarian position and reduced her job duties to those of a subordinate position or moved her to a position substantially different from that of her librarian position, they breached her employment contract and constructively discharged her.

The court of appeals stated that Coley contended the trial court erred by refusing to submit her instruction. 147 S.W.3d at 569. In considering Coley's issue, however, the court said that Coley contended the trial court incorrectly defined the term "constructive discharge" and held that the constructive discharge instruction did not properly submit Coley's theory to the jury. *Id.* at 571. The reversal was in error because Rule 278 precludes reversal unless

a substantially correct instruction was requested in writing and tendered by Coley. She did not do so. I agree with Baylor's assertion in its first issue. Coley's proposed instruction was not substantially correct because it contains a direct comment on the weight of the evidence. *See* TEX.R. CIV. P. 277; *Placencio,* 724 S.W.2d at 20–21.