**Affirmed and Memorandum Opinion filed July 30, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00977-CV

---

### MATHEW ESTERS, Appellant

### V.

### TEXAS DEPARTMENT OF TRANSPORTATION AND STANLEY YIN IN HIS OFFICIAL CAPACITY ONLY FOR THE TEXAS DEPARTMENT OF TRANSPORTATION, Appellees

---

### On Appeal from the 333rd District Court
### Harris County, Texas
### Trial Court Cause No. 2006-43005

---

## M E M O R A N D U M   O P I N I O N

In this employment discrimination case, appellant Mathew Esters challenges the trial court's overruling of his objection to the jury charge. He argues that the trial court incorrectly instructed the jury to consider only a 300-day period based upon 42 United States Code section 2000e-5(e), and should instead have instructed the jury to consider a two-year period based upon Texas Labor Code section

21.256. Because the correct statutory period is not two years, we affirm.

## BACKGROUND

Esters allegedly endured deplorable treatment while employed by appellee Texas Department of Transportation. He testified that problems with his eventual supervisor, appellee Stanley Yin, began in the 1980s. For example, in the '80s or early '90s, Yin allegedly tried to force Esters, who is African–American, to take Confederate Heroes Day as an optional holiday instead of Martin Luther King Day. Esters testified that, between 1997 and 2000, Yin told him that he would never be promoted as long as he worked in Yin's lab.

Esters's most disturbing allegations, however, occurred after 2002, following Esters's testimony against Yin in another employee's race discrimination lawsuit. Yin allegedly told Esters that "if [Esters] testified it was gonna be hell to pay." Esters interpreted this statement to mean that Yin was "out to get [him], to terminate [him], to hold [him] back."

There was evidence that, after Esters testified, Yin's alleged racist behavior escalated. According to Esters, Yin called him "stupid [expletive] black," "nigger," and "stupid boy."[1] Yin allegedly "joke[d]" that Esters was "the minority token black boy." There was evidence that Yin described black employees as "crippled mentally," that he limited their restroom breaks, and that he interfered with their ability to advance in the Department. Another African–American employee testified that Yin told him "blacks have no standards." The employee said that even though he had an advanced engineering degree, Yin assigned him janitorial duties that "non-black" employees were not assigned. Yin allegedly told African–American employees that they "could file all the law suits [they]

---

[1] We do not in any way approve of such language, but we include it here because it is relevant to Esters's claims.

2

want[ed]," "[h]e w[ould] continue to treat [them] the same[ ] because [the Department] w[ould] back him."

This behavior reached a crescendo in 2005, when Yin allegedly began taunting Esters by placing items around Esters's desk. In January of that year, it was job fliers. In April, Yin allegedly hung a noose above the desk. In May, it was a flier that read "GO BACK TO AFRICA YOU NIGGERS." And in September, it was a flier describing African–Americans as "Big lipped monkies!!!"

The alleged use of abusive, racist language also increased in 2005. In June, Yin allegedly called Esters "a lazy [expletive] non-production black employee." When Esters took sick leave in July, Yin allegedly criticized him, saying "'[t]hat['s] just like blacks always want[ ] something free." In September, according to Esters, Yin described him as "one more worthless black [expletive] to run off."

There was evidence that Esters filed fifteen or sixteen internal complaints about Yin's behavior, including a letter about the noose incident to a Department supervisor. For his part, Yin denied Esters's allegations. There is no indication that the Department ever disciplined Yin.

According to Esters, the Department's abusive environment led him to suffer a nervous breakdown. He considered suicide. In 2006, Esters paid over $27,000 to begin collecting his retirement early and leave the Department. Social Security later determined that, by the time Esters retired, he was "100-percent mental[ly] disabled." Although Esters worked for the Department for twenty-six years, he received only one promotion, which he testified came in the wake of the other racial discrimination lawsuit involving allegations against Yin.

On March 3, 2006, twenty-eight days before his retirement on March 31,

Esters filed a charge of discrimination (complaint) with the federal Equal Employment Opportunity Commission (EEOC) and with the Texas Workforce Commission Civil Rights Division (TWC). The EEOC processed and investigated Esters's complaint. The EEOC closed its file on this complaint because, based on its investigation, it was unable to conclude that the information obtained established any statutory violations. The EEOC and the TWC each gave Esters a notice of his right to sue the Department.

Esters filed this action asserting various claims, including claims based upon alleged violations of the Texas Labor Code and Title VII of the federal Civil Rights Act of 1964 (*see* 42 U.S.C. §§ 2000e-1 to -17 (2012)). Esters alleged, among other things, racially discriminatory treatment, constructive discharge, and a racially hostile work environment. Esters's claims were tried to a jury, and the trial court submitted the following five liability questions to the jury: (1) "Was race a motivating factor in [the Department's] decision, if any, not to promote [Esters] from June 4, 2005 through March 31, 2006?"; (2) "Was race a motivating factor in [the Department's] decision, if any, to discharge [Esters]?"; (3) "Did the [Department] discharge [Esters] because [Esters] filed a charge with the [EEOC] on or about March 3, 2006?"; (4) "Was [Esters] subjected to harassment based on his race by [the Department] during the period of June 4, 2005 through March 31, 2006?"; and (5) "Was [Esters] subjected to a hostile working environment during the period of June 4, 2005 through March 31, 2006?". The jury answered "no" to each of these questions, and the trial court rendered judgment that Esters take nothing based on the jury's verdict.

The only issue before us is whether the trial court should have instructed the jury to consider a two-year period rather than a 300-day period. Both Texas and federal law require that administrative complaints regarding workplace

4

discrimination be submitted within a fixed period after "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); Tex. Lab. Code Ann. § 21.202 (West 2006).

At trial, the Department contended that Esters filed his administrative complaint too long after the Department's discriminatory conduct had ceased and argued that Esters cannot recover based upon conduct that occurred outside the applicable statutory time period. To address this issue, the trial court instructed the jury to consider only events that occurred within 300 days of Esters's retirement.[2] Esters objected to the first, fourth, and fifth questions quoted above, arguing that a Texas statute and United States Supreme Court precedent required a two-year period. This colloquy ensued:

> [Esters's counsel]: . . . [U]nder Section 21.256 [of the Texas Labor Code], it is my interpretation of the statute that it provides for a two-year anniversary from the date of the charge and in this particular case the charge was filed in March, 2006 and based on that anniversary date we would be allowed to go back for all actions that took place in the past two years from the date of the charge of discrimination.
>
> THE COURT: . . . [T]here's no dispute that the charge was filed on March 3rd, 2006, right?
>
> [The Department's counsel]: Correct.
>
> . . . .
>
> THE COURT: So that would roughly take you back under your argument to March 3rd, 2004?
>
> [Esters's counsel]: Correct.
>
> THE COURT: I want you to make your argument fully. I

---

[2] At trial, neither party asserted that the period should have begun 300 days before Esters filed his complaint on March 3, 2006, rather than 300 days before he retired on March 31, 2006. *See* 42 U.S.C.A. § 2000e-5(e); Tex. Labor Code Ann. § 21.202. Use of the retirement date effectively shortened the period under consideration by twenty-eight days. Because Esters failed to raise this issue in the trial court, however, we may not consider it.

didn't mean to interrupt you, but I want your point on the record clearly.

[Esters's counsel]: So what that would do is allow us to go back and bring in this case all the way back to 2004, . . . those discriminatory acts that occurred back in 2004, including Mr. Mathew Esters' application for promotion to a Material Processor V, as well as all those acts that were delineated in Mr. Esters' . . . time line of all the discrete discriminatory acts.

Even if you look at it I think that what the courts have done in these cases is they apply the same standard that they applied in those personal injury cases which is a two-year statute of limitation for those acts.

. . . I would also like to cite a case which is -- this is a U.S. Supreme Court case which is *National Railroad Passenger Corp., versus Morgan* and that is a 2002 opinion, and they go into not only just the two-year statute of limitation, they go as far as talking about what they call a continuing violation.

. . . .

. . . [A]nd in that case they even let time barred issues be considered by the Court. Some time barred claims were even allowed.

And so what we're arguing here today is that the 300-day window is not the appropriate window as far as limitation is concerned on Mr. Esters' claim, but the appropriate remedy would be -- the appropriate limitation period would be the two-year as opposed to the one-year -- 300-day statute of limitation.

The trial court overruled the objection and submitted a charge that limited the jury's consideration of the Department's liability to events during the 300-day period from June 4, 2005, to March 31, 2006. The jury answered "No" to all questions on the Department's liability, but included with its verdict a note reading as follows:

ALL THE JURORS WERE DISTURBED BY THE EVENTS IN THE HOUSTON DISTRICT LAB OF THE TEXAS DEPARTMENT OF TRANSPORTATION.

6

HOWEVER GIVEN THE CONSTRAINTS AND EVIDENCE DURING THE WINDOW FROM JUNE 4, 2005 UNTIL MARCH 31, 2006 WE WERE OBLIGATED TO ANSWER THE QUESTIONS AS WE DID.

TEXAS DEPARTMENT OF TRANSPORTATION SHOULD NOT FEEL VINDICATION BY THIS VERDICT, AND SHOULD TAKE THIS OPPORTUNITY TO EXAMINE COMPANY CULTURE AND PRACTICES.

THE JURY OF THE FIGHTING 333RD

Twelve signatures appear below the note.

Esters moved for a new trial, arguing, among other things, that the jury should have been instructed to consider a two-year period instead of a 300-day period. The trial court denied the motion, and Esters appeals the overruling of his jury charge objection.

## ANALYSIS

In two issues on appeal, Esters asserts the same two arguments he raised in the above-quoted discussion with the trial court. We conclude that neither argument required the court to instruct the jury to consider a two-year period. But, we begin by examining why the trial court may have instructed the jury to consider a 300-day period in the first place.

Employees who file administrative complaints regarding Title VII claims with the EEOC and the TWC simultaneously must do so "within three hundred days after the alleged unlawful employment practice occurred." *Urrutia v. Valero Energy Corp.*, 841 F.2d 123, 125 (5th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)). If a plaintiff does not file an administrative complaint within 300 days, the plaintiff cannot recover on a Title VII claim based on this alleged unlawful employment practice.[3] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–18

---

[3] The time period for filing an administrative complaint regarding a Title VII claim is subject to doctrines such as waiver, estoppel, and equitable tolling. *See Nat'l R.R. Passenger*

7

(2002).

In this case, Esters filed his complaints simultaneously. In the jury charge, the trial court incorporated the 300-day window as a "look-back period" in its liability questions.[4] Neither party objected to this manner of submitting the issue to the jury, and neither complains about it on appeal. Therefore, we express no opinion on whether the trial court's instruction was correct in this regard. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). Instead, we proceed to Esters's arguments that the trial court should have instructed the jury to consider a period of two years instead of 300 days. We determine whether this challenged portion of the charge is legally correct using a de novo standard of review. *Hatfield v. Solomon*, 316 S.W.3d 50, 57 (Tex. App.—Houston [14th Dist.] 2010, no pet.).[5]

Esters argues that the trial court should have instructed the jury to consider a two-year period for two reasons: (1) Texas Labor Code section 21.256 entitled him to a two-year period; and (2) the "continuing violation doctrine" required the jury

---

*Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002). Nonetheless, Esters has not raised waiver, estoppel, or equitable tolling arguments.

[4] In addition to his Title VII claims, Esters brought claims under the Texas Commission on Human Rights Act (TCHRA), a Texas statute that parallels Title VII. To the extent the trial court may have applied a 300-day statutory period to Esters's TCHRA claims, its decision to do so is not before us, and we express no opinion upon it. We note that the TCHRA requires administrative complaints to be filed within 180 days after the date on which the alleged unlawful employment practice occurred, *see* Tex. Lab. Code Ann. § 21.202, and some authorities have held Title VII's 300-day period does not apply to TCHRA claims. *See, e.g.*, *Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 264 (5th Cir. 1991); *Ashcroft v. HEPC-Anatole, Inc.*, 244 S.W.3d 649, 651 (Tex. App.—Dallas 2008, no pet.).

[5] In his second issue, Esters contends that "the jury's answers . . . [are] against the great weight and preponderance of the evidence and [are] manifestly unjust because of the application of the wrong 300 days actionable liability period." We understand this issue to attack the trial court's legal conclusion that 300 days was the correct period, as does Esters's first issue. Thus, we consider both issues together.

to consider a two-year period.[6] *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 109. We address each argument in turn.

A. **Texas Labor Code section 21.256 does not address the period for filing an administrative complaint and therefore did not require the jury to consider a two-year period.**

Texas Labor Code section 21.256 provides, in its entirety, that "[a] civil action may not be brought under [the Judicial Enforcement subchapter of the Labor Code] later than the second anniversary of the date the complaint relating to the action is filed." Esters contends that because he filed his administrative complaint on March 31, 2006, this statute makes the complaint timely as to all acts by the Department after March 31, 2004.[7] We disagree.

Under this statute, "a plaintiff . . . must file suit within two years of the date he filed his complaint with the Texas Workforce Commission [or EEOC]." *Goss v. City of Houston*, 391 S.W.3d 168, 172 (Tex. App.—Houston [1st Dist.] 2012, no pet.). If an employee fails to file suit within two years of his initial administrative complaint, the statute bars his suit. *See id.* Here, no one contends—or has ever contended—that Esters's lawsuit was untimely under this statute. Esters filed his administrative complaint on March 3, 2006 and brought this suit on July 11, 2006, well within the required two-year period.

In sum, section 21.256 sets a two-year deadline for filing a lawsuit by reference to the date the administrative complaint was filed, and it is undisputed

---

[6] On appeal, Esters occasionally argues that he was entitled to a period of two years "or more" and contends he raised this issue in the trial court. Regardless of the actual period Esters requested, however, his arguments do not justify altering the period in the jury instructions. For the reasons we discuss below, the continuing violation doctrine does not support a jury instruction to consider a two-year period or any other specific period in excess of two years.

[7] As noted above, Esters actually filed his administrative complaint on March 3, 2006, not March 31, 2006.

that deadline was met here. This particular statute says nothing about when the administrative complaint had to be filed or how far back the jury may look in determining the employer's liability. Thus, it provides no support for Esters's objection to instructing the jury to consider a 300-day period in determining liability.[8]

**B.  The continuing violation doctrine did not entitle Esters to an instruction on a two-year period.**

Esters next contends that the continuing violation doctrine required the trial court to instruct the jury to consider a two-year period. We disagree.

The continuing violation doctrine is an exception to statutes that require an administrative complaint to be filed within a certain period of time after an unlawful employment practice occurs. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 115–21; *Santi v. Univ. of Texas Health Sci. Ctr. at Houston*, 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 115–21; *Santi,* 312 S.W.3d. at 804–05. To invoke the doctrine, an employee must show an organized scheme leading to and including a present violation, so that the cumulative effect of the discriminatory practice, rather than any discrete occurrence, gives rise to the cause of action. *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.). For example, hostile work environment,

---

[8] Esters also contends that section 21.258(c) of the Texas Labor Code entitled him to an instruction based on a two-year period because it provides that "[l]iability under a back pay award may not accrue for a date more than two years before the date a complaint is filed with the commission." Section 21.258 limits a court's ability to award equitable relief in the form of back pay, but does not govern—or even mention—administrative filing requirements. Therefore, like section 21.256, section 21.258 does not support Esters's request for a two-year period. *Cf. Morgan*, 536 U.S. at 119 (although administrative Title VII complaint must be within either 180 or 300 days of alleged unlawful practice, back pay for up to two years available as damages).

10

which was one of Esters's claims, is a continuing violation. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 115–17. Termination, failure to promote, denial of transfer, or refusal to hire are discrete acts. *Id.* at 114.[9]

Under the continuing violation doctrine, if the plaintiff can show a series of related acts, only one act need fall within the filing period. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117; *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 42 (Tex. App.—Austin 1998, pet. denied). But the doctrine does not alter the relevant statutory timeframes; it only changes the extent to which actionable behavior must occur within these timeframes. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 115–21; *Davis*, 979 S.W.2d at 41–42. The relevant filing period is still 300 days,[10] but the jury could consider related acts prior to the period as long as one act contributing to the claim occurred within it. *See id.* Simply instructing the jury to consider a two-year period, as Esters argues the trial court should have, is inconsistent with the nature of the doctrine. An instruction incorporating a two-year period would have enabled the jury to award damages even if no event contributing to the hostile work environment occurred within the 300-day filing period for an administrative complaint. Thus, the instruction Esters sought would have changed the deadline for filing an administrative complaint to two years after the date on which the alleged unlawful employment practice occurred. The continuing violation doctrine does not provide this relief. Even assuming, without deciding, that Esters proved a hostile work environment, that fact would not entitle him to a jury instruction on a two-year period. Accordingly, the trial court did not err in overruling Esters's objection.

---

[9] If an employee's administrative complaint is not timely as to some discrete discriminatory acts, those acts may still be used "as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

[10] In some circumstances, the period is 180 days. *See* 42 U.S.C.A. § 2000e-5(e); Tex. Lab. Code Ann. § 21.202.

Moreover, to the extent Esters contends the trial court erred by failing to instruct the jury on the continuing violation doctrine, Esters neither requested such a supplemental instruction nor tendered a substantially correct instruction to the trial court. *See* Tex. R. Civ. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."). Instead, he urged the trial court to instruct the jury on a two-year period to which he was not entitled. Thus, even if we construe the remarks of Esters's counsel as a request for an instruction using a two-year period based upon the continuing violation doctrine, this request for an affirmatively incorrect instruction does not satisfy the requirement for submission of a substantially correct instruction in writing. *See Baylor Univ. v. Coley*, 221 S.W.3d 599, 607 (Tex. 2007) (Johnson, J., concurring) ("A requested instruction that is affirmatively incorrect is not 'substantially correct' . . . .").[11] For these reasons, we hold that the trial court did not err by in overruling Esters's objection.[12]

## CONCLUSION

If Esters's allegations are true, severe racial discrimination occurred in this

---

[11] As explained above, the only issue before us regarding the trial court's jury instructions is whether the 300-day period should instead have been a two-year period. Thus, beyond holding that a two-year period is not correct, this case does not require us to prescribe a correct instruction regarding the administrative filing period or the continuing violation doctrine. Trial courts have broad discretion to use evidentiary rulings, limiting instructions, or jury charge instructions to ensure that the jury considers the relevant acts in determining liability. *See Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) ("The trial court has considerable discretion to determine proper jury instructions . . . ."); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) ("[T]he trial court . . . has broad discretion to determine the admissibility of evidence.").

[12] Because the trial court did not err, we need not address Esters's contentions that the trial court's instruction harmed him.

12

case.  Like the jury, we do not condone such behavior.  But it is not this Court's role to find facts or to consider arguments the parties have not made.  Because the trial court did not err in refusing to instruct the jury to apply a two-year period, we affirm its judgment.


/s/    J. Brett Busby
        Justice


Panel consists of Justices Frost, Brown, and Busby.