# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00119-CV

**Bryan L. Gano, Appellant**

**v.**

**Dimas Diaz and Tracy Diaz, Appellees**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY,
### NO. C-1-CV-15-009940, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Bryan L. Gano appeals from the trial court's final judgment denying his motion for summary judgment and granting that of Dimas Diaz and Tracy Diaz. The Diazes sued Gano for breach of a contract whereby Gano purchased a business from the Diazes. For the reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

The Diazes owned Day Ventures, LLC, which operated a wine business in Round Rock, Texas. Day Ventures had executed a lease (Lease) with landlord Capital City-Socrates, Ltd. On December 30, 2009, the Diazes sold Day Ventures to Gano, effecting the sale through a "Membership Interest Purchase Agreement" (Purchase Agreement), which transferred the Lease to Gano. That same day, in accordance with the terms of the Lease, the Diazes sent a letter to the landlord notifying it about the proposed assignment of the Lease. In the letter, Dimas Diaz agreed

to continue the personal guaranty of performance under the Lease that he had executed when Day Ventures first entered the Lease in 2005. The letter was signed by Dimas Diaz on behalf of tenant Day Ventures, as transferor, and as guarantor; by Tracy Diaz, as transferor; and by Gano, as transferee. The Purchase Agreement contained the following provision relating to the guaranty in paragraph 6.5:

> No Renewal of Shopping Center Lease Absent Termination of Sellers Guaranty. Purchaser and Day Ventures covenant with Sellers that following Closing, Day Ventures will not exercise its option to extend Day Ventures's existing shopping center lease for the premises at the Round Rock Crossing Center Suite 120, and Purchaser will not cause Day Ventures to extend such lease, without having previously obtained a release from the landlord of Sellers' existing guaranty of lease obligations in form acceptable to Sellers. The foregoing is a material condition to Sellers' decision to enter into the transactions contemplated herein and any breach of this covenant shall give Sellers the right to seek equitable relief against such extension without posting bond therefor.

The Purchase Agreement also contained the following indemnity provision in paragraph 11.3:

> Indemnity of Sellers. Subject to the terms and conditions of this Article 11, Purchaser and Day Ventures, jointly and severally, shall indemnify, defend and hold harmless Sellers and their respective officers, members, managers, employees, agents, affiliates, successors and assigns (the "Seller Indemnified Parties") from and against any and all Losses incurred by the Seller Indemnified Parties as a result of or arising out of: (a) any breach of any of the representations, warranties or covenants made by Purchaser or Day Ventures in this Agreement; (b) any Assumed Liability; or (c) the use of the Transferred Assets or operation of the Business subsequent to the Closing Date.

Paragraph 2.3(d) of the Purchase Agreement defined "Assumed Liabilities" to include "the store lease."

In February 2011, Gano, as owner of Day Ventures, and Round Rock Crossings, L.P., as successor in interest to landlord Capital City-Socrates, executed a "2nd Amendment" to the Lease, extending the term for one year.[1] Gano did not obtain a release or termination of Dimas Diaz's personal guaranty of Lease obligations from the landlord. In 2012, Gano executed a "3rd Amendment" to the Lease, extending the lease until January 2015. Gano again did not obtain a release or termination of Dimas Diaz's personal guaranty of lease obligations from the landlord. In 2012, according to the Diazes, or 2014, according to Gano, Gano sold Day Ventures and assigned the Lease to the new owners, who eventually closed the business and defaulted under the Lease. The landlord sued the new owners and Dimas Diaz, as guarantor. Dimas Diaz settled with the landlord and was nonsuited on June 4, 2015. The Diazes made demand on Gano for reimbursement of $5,000 expended in defending and settling the new owner's suit against Dimas Diaz. When Gano did not offer reimbursement, the Diazes brought this suit against Gano, alleging that Gano breached the Purchase Agreement by failing to obtain a termination of the guaranty and by failing to indemnify Diaz.

The parties both filed traditional motions for summary judgment and submitted evidence. In his motion, Gano did not dispute that the Diazes had established the elements of a breach of contract claim but contended that his affirmative defenses, including the defense that the claim was barred by the statute of limitations, defeated the claim for failure to terminate the guaranty. In their response and motion, the Diazes argued that Gano had failed to address their claim for breach of contract based on the indemnity provision and that they had shown that there was no

---

[1] The Diazes had executed a "First Amendment" to the Lease in April 2009.

genuine issue as to any material fact necessary to establish the elements of that claim. In his response, Gano contended that because the Diazes' claim for breach of contract based on his failure to terminate the guaranty was barred by the statute of limitations, their claim for breach of the indemnity provision was also barred. In separate orders, the trial court denied Gano's motion and granted the Diazes' motion without stating a basis in either order. The trial court then rendered final judgment, granting the Diazes' motion, denying Gano's motion, and awarding the Diazes $5,000 in actual damages plus attorney's fees and contingent attorney's fees on appeal. Gano filed a motion for new trial that was overruled by operation of law and a second motion for new trial that appears to have been overruled by operation of law, as well. This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's summary judgment de novo. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). When the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence and questions presented by both sides. *Dorsett*, 164 S.W.3d at 661.

4

If we determine that the trial court has erred, we render the judgment the trial court should have rendered. *Id.*

Gano's issues also involve matters of contract construction. Our primary concern in construing a contract, such as the Lease, is to ascertain and give effect to the intent of the parties as expressed in the instrument. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam). We must not look to isolated terms but are to consider the instrument as a whole. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

## DISCUSSION

In two stated issues, Gano argues that the trial court erred (1) in granting the Diazes' motion for summary judgment and (2) in denying his motion for summary judgment. Arguing the issues together, Gano does not contend that the Diazes failed to establish the elements of their breach of contract claim, but, as in both his motion for summary judgment and his response to that of the Diazes, relies solely on his affirmative defenses. The Diazes contend that by failing to present arguments on their specific summary judgment grounds, Gano has waived his challenge to the trial court's grant of their motion for summary judgment and that if we overrule Gano's arguments as to his affirmative defenses, we must affirm the trial court's final judgment. We agree that overruling Gano's affirmative defense arguments necessitates that we affirm the trial court's judgment. In fact,

Gano characterizes his affirmative defenses as a "yes, but" and concedes that without reference to his affirmative defenses, the Diazes' breach of contract claim is "facially valid."

However, we disagree that by arguing only his affirmative defenses, Gano has waived his challenge to the trial court's ruling on the Diazes' motion for summary judgment. While, as the Diazes argue, an affirmative defense does not rebut factual propositions asserted by a plaintiff, it does "seek[] to establish an independent reason why the plaintiff should not recover." *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991); *Internacional Realty, Inc. v. 2005 RP W., Ltd.*, 449 S.W.3d 512, 529 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). A party may defeat another party's right to summary judgment by asserting and presenting sufficient evidence to raise a fact issue on each element of his affirmative defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (stating that if party opposing summary judgment relies on affirmative defense, he must present sufficient evidence to raise fact issue on each element of defense to avoid summary judgment); *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 706–07 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that where summary judgment movant met burden, nonmovant failed to defeat motion based on affirmative defense where nonmovant failed to produce sufficient evidence to create fact issue on each element of defense). Thus, we consider Gano's affirmative defense arguments as they relate to the trial court's rulings on both motions. With this clarification, we turn to Gano's arguments concerning his affirmative defenses.

**Statute of Limitations**

Gano first argues that the Diazes' breach of contract claim is barred by the statute of limitations. Plaintiffs alleging breach of contract must bring suit within four years after the claim

6

accrues. Tex. Civ. Prac. & Rem. Code § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002); *Spicewood Summit Office Condos. Ass'n v. American First Lloyd's Ins. Co.*, 287 S.W.3d 461, 464 (Tex. App.—Austin 2009, pet. denied). Generally, a breach of contract claim accrues when the contract is breached. *Stine*, 80 S.W.3d at 592; *Spicewood Summit*, 287 S.W.3d at 464. The Diazes pleaded that Gano breached the Purchase Agreement by failing to terminate Dimas Diaz's personal guaranty when Gano executed the second amendment to the lease on or about February 2, 2011, as required by paragraph 6.5. The Diazes filed this suit on October 19, 2015, more than four years after the alleged breach. The Diazes did not plead or assert the discovery rule in their response to Gano's motion for summary judgment or in their own motion or dispute that their claim based on the guaranty provision was time barred. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) (explaining that discovery rule applies "on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable" and defers accrual "until injury was or could have been discovered).

We therefore agree that the Diazes' claim for breach of contract based on Gano's failure to obtain release of Dimas Diaz's personal guaranty would be barred by limitations. *See Stine*, 80 S.W.3d at 592; *Spicewood Summit*, 287 S.W.3d at 464. Accordingly, we conclude that the trial court erred in denying Gano's motion for summary judgment as to the Diazes' claim for breach of the guaranty provision, and we sustain Gano's second issue to the extent it relates to that claim. However, because the Diazes also asserted a claim for breach of the indemnity provision, resolution of Gano's issue concerning the claim for breach of the agreement to terminate the guaranty agreement is not dispositive, and the trial court's error in denying Gano's motion for summary as

to that claim did not probably lead to an improper judgment and is therefore harmless. *See* Tex. R. App. 44.1(a)(1) (providing that no judgment may be reversed on ground that trial court made error unless error probably caused rendition of improper judgment); *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 144–45 (Tex. 2016). We turn, then, to Gano's arguments concerning the indemnity provision.

Gano argues that because the right to indemnity is not an independent cause of action but is derivative of a party's primary cause of action, the Diazes' claim for breach of the indemnity provision is also barred by the statute of limitations. We cannot agree. First, Gano conflates contractual indemnity with common law and statutory indemnity. The cases he cites stand for the proposition that a defendant's right of contribution from a co-defendant in a tort action is derivative of the plaintiff's right to recover from the co-defendant. *See, e.g.*, *Varela v. American Petrofina Co. of Tex., Inc.*, 658 S.W.2d 561, 562–63 (Tex.1983) (holding that where plaintiff Varela had no cause of action against defendant Hydrocarbon, defendant Petrofina had no claim for contribution against co-defendant Hydrocarbon). Gano has cited no authority for the proposition that an indemnitee has no cause of action under a contractual indemnity agreement merely because the indemnitee has no other viable claim against the indemnitor.

Moreover, claims for indemnity under contractual provisions such as paragraph 11.3 accrue differently from ordinary breach of contract claims. There are two types of indemnity agreements, "those that indemnify against liabilities and those that indemnify against damages." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). A cause of action for breach of an agreement to indemnify against liability accrues to the indemnitee only when the

8

liability becomes fixed and certain, as by settlement or rendition of judgment, whether or not the indemnitee has yet suffered actual damages, as by payment of a judgment or a settlement or by nonsuit. *Noble Energy, Inc. v. ConocoPhillips Co.*, 532 S.W.3d 771, 778 (Tex. 2017); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 134 (Tex. 2010); *Ingersoll-Rand*, 997 S.W.2d at 207; *Stubbs v. Stubbs*, No. 10-13-00393-CV, 2014 Tex. App. LEXIS 9021, at *4–6 (Tex. App.—Waco Aug. 14, 2014, no pet.) (mem. op.); *In re State Line Fireworks, Inc.*, 387 S.W.3d 27, 32 (Tex. App.—Texarkana 2012, no pet.). In contrast, a cause of action for breach of an agreement to indemnify against damages accrues when the indemnitee suffers actual loss by being compelled to pay a settlement or judgment. *Krueger Eng'g & Mfg. Co. v. Admiral Truck Servs.*, No. 14-01-00035-CV, 2002 Tex. App. LEXIS 2740, at *25 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.); *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App.—El Paso 1993, writ denied).

Here, Gano agreed to indemnify the Diazes "from and against any and all Losses incurred by [the Diazes] . . . as a result or arising out of: (a) any breach of" the Purchase Agreement by Gano or "(b) any Assumed Liability." The parties do not address whether this agreement provides indemnity against liability or against damages. However, the summary judgment evidence showed that the landlord filed suit against the Diazes on April 29, 2015; that the Diazes had incurred losses in defending the suit by May 28, 2015; and that they were nonsuited on June 4, 2015. Therefore, whether the indemnity agreement is construed as one for liability or one for damages, the earliest possible accrual date was June 4, 2015, when the Diazes' damages became fixed and certain by nonsuit. *See Noble Energy*, 532 S.W.3d at 778; *Gilbert Tex. Constr.*, 327 S.W.3d at 134;

*Ingersoll-Rand*, 997 S.W.2d at 207; *Stubbs*, 2014 Tex. App. LEXIS 9021, at *4–6 (holding that nonsuit terminated claim and fixed damages as result of claim, which consisted of indemnitee's attorney's fees incurred in defending suit until nonsuit). The Diazes filed this suit on October 19, 2015, approximately four months after the earliest accrual date and well within the four year statute of limitations.

In addition, Gano construes the indemnity agreement too narrowly, contending that it is "limited to certain breaches." While the indemnity provision does cover Gano's breach of the Purchase Agreement, it also covers "any Assumed Liability." Gano appears to argue that he was obligated to indemnify the Diazes only for his breaches of the Purchase Agreement or *breaches* of the Assumed Liabilities and asserts that he never breached "any Assumed Liability." However, the indemnity provision covers "Losses incurred by [the Diazes] as a result of or arising out of . . . any Assumed Liability," not as a result of or arising out of any *breach* of any "Assumed Liability." Paragraph 2.3 of the Purchase Agreement defined "Assumed Liabilities" to include accounts payable, liabilities arising after the closing date, liabilities relating to balance due on gift cards, "the store lease," and other liabilities listed on a separate schedule. The express language of paragraphs 11.2 and 2.3 of the indemnity agreement, read together, reflects the parties' intention that Gano indemnify the Diazes against losses arising from any "Assumed Liability," including the Lease. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12; *Plainsman Trading*, 898 S.W.2d at 789. The Diazes' losses here were incurred in defending a lawsuit brought as the result of the new owners' breach of the Lease. Thus, the losses the Diazes incurred arose from the Lease and, under the plain language of the Purchase Agreement, fall within the parameters of the terms of the indemnity agreement. *See Frost Nat'l*

10

*Bank*, 165 S.W.3d at 311–12; *Dorsett*, 164 S.W.3d at 662; *Plainsman Trading*, 898 S.W.2d at 789. We conclude that Gano has not established or raised a material fact issue as to his affirmative defense that the Diazes' claim for indemnity is barred by the statute of limitations. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16; *Brownlee*, 665 S.W.2d at 112.

**Impossibility**

Gano also relies on the affirmative defense of original, objective impossibility. *See Janak v. Federal Deposit Ins. Corp.*, 586 S.W.2d 902, 906–07 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) (distinguishing between original impossibility—which exists when contract is entered into—and supervening impossibility—which develops after inception of contract—and between objective impossibility—which is due to the nature of the contract and excuses performance—and subjective impossibility—which is wholly due to the inability of the promisor and does not excuse performance); *see also Hollis v. Gallagher*, No. 03-11-00278-CV, 2012 Tex. App. LEXIS 7547, at *12–13 (Tex. App.—Austin Aug. 28, 2012, no pet.) (mem. op.) (explaining supervening impossibility); *Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14-09-00748-CV, 2010 Tex. App. LEXIS 4465, at *14–15 (Tex. App.—Houston [14th Dist.] June 15, 2010, pet. denied) (mem. op.) (distinguishing between objective and subjective impossibility).

Gano argues that he could not have cancelled Dimas Diaz's personal guaranty because he was not a party to the agreement and the promise was "unconditional and unending." However, Gano does not argue that it was impossible for him to perform his duty to indemnify the Diazes and has therefore waived this issue as it relates to the indemnity agreement. *See* Tex. R. App. P. 38.1(i). Further, to the extent impossibility of Gano's obligation to cancel the guaranty bears on

11

his duty to indemnify the Diazes for losses resulting from the new owners' breach of the lease, we do not find Gano's arguments concerning impossibility persuasive. First, although the guaranty was unconditional as to the landlord, it was not "unending"; the Purchase Agreement restricted the guaranty to the current term of the lease by expressly providing that Gano could not extend or renew the lease without obtaining a release of the guaranty. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12.

Further, although Gano argues that he could not cancel the guaranty because he was not a party to it, on the record before us, Gano has not shown that it was impossible for him to obtain a release from the landlord. The record reflects that Gano was a signator, as transferee, to the letter to the landlord containing the guaranty and that the landlord was aware of Gano's purchase of Day Ventures and the assignment of the Lease to him. It is possible that the landlord would have agreed to release the guaranty—perhaps in exchange for Gano's own personal guaranty, just as the landlord had accepted Dimas Diaz's personal guaranty when the Lease was first executed in 2005. Similarly, Gano could have obtained a new lease, including his own personal guaranty or some other arrangement, which would have eliminated the need to obtain a release of Dimas Diaz's guaranty.

Gano did not produce any evidence that he had even requested that the landlord release the guaranty in extending the lease or enter into a new lease, much less any evidence that the landlord refused. We conclude that Gano has not established or raised a genuine issue of material fact as to his affirmative defense of impossibility. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16; *Brownlee*, 665 S.W.2d at 112; *Garcia v. Baumgarten*, No. 03-14-00267, 2015 Tex. App. LEXIS 7878, at *14–16 (Tex. App.—Austin July 30, 2015, no pet.) (mem. op.) (affirming summary judgment against settling defendant on defense of impossibility, holding that

12

defendant did not show impossibility of performance of settlement agreement where defendant was unable to obtain reverse mortgage in amount specified in settlement agreement but agreement contemplated that if defendant were unable to obtain specified reverse mortgage to pay settlement, defendant would vacate and sell house); *Hewitt v. Biscaro*, 353 S.W.3d 304, 310–11 (Tex. App.—Dallas 2011, no pet.) (concluding that in summary judgment proceeding, nonmovants did not create material fact issue on affirmative defense of impossibility where nonmovants contended SEC ordered them to cease payments but produced no evidence of order, directive, or injunction by SEC); *see also Carter v. Flowers*, No. 02-10-00226-CV, 2011 Tex. App. LEXIS 7829, at \*9 (Tex. App.—Fort Worth Sept. 29, 2011, no pet.) (mem. op.) (holding that defendant bailee did not prove impossibility where evidence showed it was impossible for bailee to deliver vehicle in same condition as when bailee received it, but did not show it was impossible to deliver vehicle at all); *Grayson*, 2010 Tex. App. LEXIS 4465, at \*15–16 (concluding that defendants' lack of title to property did not render performance objectively impossible); *Partners in Bldg., L.P. v. Jamail*, No. 03-03-00709-CV, 2004 Tex App. LEXIS 11226, at \*27–28 (Tex. App.—Austin Dec. 16, 2004, no pet.) (mem. op.) (concluding that need to clarify title did not render performance impossible).

**Estoppel**

Gano next argues that the Diazes are estopped from asserting any action for Gano's failure to terminate the guaranty agreement. Again, Gano focuses his arguments on the Diazes' claim for breach of the agreement to terminate the guaranty and offers no argument concerning the Diazes' claim for breach of the indemnity agreement. Thus, he has waived this issue as to the indemnity agreement. *See* Tex. R. App. P. 38.1(i). Moreover, to the extent estoppel of the claim

concerning termination of the guaranty agreement is relevant to the Diazes' claim for breach of the indemnity agreement, we do not agree that estoppel bars recovery.

Although Gano asserts the affirmative defense of estoppel, exactly which estoppel doctrine he relies on is unclear. In his answer, Gano pleaded quasi estoppel. However, in his motion for summary judgment, Gano asserted only "estoppel," cited to authority on promissory estoppel, and argued detrimental reliance, which is an element of promissory estoppel. *See Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)) (listing requisites of promissory estoppel, including detrimental reliance). In his response to the Diazes' motion, Gano asserted "Promissory Estoppel" and appears to have argued both quasi estoppel and promissory estoppel without citing any authority. And in his briefing, Gano states the affirmative defense of quasi estoppel but argues elements of both quasi estoppel and promissory estoppel. Despite Gano's conflation of the two doctrines, even if we construe his pleadings below liberally to conclude that Gano preserved the issues of both promissory estoppel and quasi estoppel for appellate review, *see* Tex. R. App. P. 33.1(a)(1), and likewise liberally construe his briefing on appeal as presenting both types of estoppel for appellate review, *see id.* R. 38.1(i), we do not find his arguments on either affirmative defense persuasive.

The elements of quasi estoppel and promissory estoppel are different. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 548 (Tex. App.—Austin 1999, pet. denied) (stating elements of quasi estoppel); *Stromboe*, 102 S.W.3d at 686 n.25 (listing requisites of promissory estoppel). Quasi estoppel is an equitable doctrine that "'precludes a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid

14

corresponding obligations or effects.'" *Thomas v. C & M Jones Invs., LP*, No. 03-14-00374-CV, 2016 Tex. App. LEXIS 7553, at *12 n.14 (Tex. App.—Austin July 15, 2016, no pet.) (mem. op.) (quoting *Stable Energy*, 999 S.W.2d at 548). "Phrased another way, it precludes a party from asserting, to another's detriment, a right inconsistent with a position he has previously taken." *Id.* (citing *Ray v. T.D.*, No. 03-06-00242-CV, 2008 Tex. App. LEXIS 986, at *23 (Tex. App.—Austin Feb. 7, 2008, no pet.) (mem. op.)). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he accepted a benefit. *Id.* (citing *Ray*, 2008 Tex. App. LEXIS 986, at *23; *Stable Energy*, 999 S.W.2d at 548).

In what appears to be an argument in support of the affirmative defense of quasi estoppel, Gano contends that because Dimas Diaz took the position that he would remain as guarantor of the lease agreement in the December 30, 2009 letter to the landlord and benefitted from that position, the Diazes cannot now take a position contrary to the unequivocal guaranty. Based on the summary judgment evidence, we cannot agree that the Diazes now take a position inconsistent with the guaranty. As part of the same transaction in which Dimas Diaz agreed to continue acting as guarantor in the December 30, 2009 letter, the parties executed the Purchase Agreement, which expressly limited the guaranty by prohibiting Gano from extending the Lease without obtaining a release of the guaranty. The Diazes' current attempt to enforce the contemporaneously executed indemnity agreement for losses incurred as a result of the new owners' breach of the Lease and the landlord's enforcement of the guaranty agreement is in no way inconsistent with the position taken by the Diazes in the December 30, 2009 letter and the Purchase Agreement, construed together. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12; *Plainsman Trading*, 898 S.W.2d at 789. Thus, Gano has

15

not created a fact issue or established the requisite of quasi estoppel that the Diazes have taken a position that is inconsistent from a prior position. *See* Tex. R. Civ. P. 166a(c); *Thomas*, 2016 Tex. App. LEXIS 7553, at *12 n.14.

The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *Stromboe*, 102 S.W.3d at 686 n.25; *English*, 660 S.W.2d at 524. Gano argues that Dimas Diaz affirmatively represented that he would personally guarantee the Lease to induce him into the Purchase Agreement and that Gano relied on that promise to his detriment. However, under the doctrine of promissory estoppel, the detrimental reliance must be by the promisee. *Stromboe*, 102 S.W.3d at 686 n.25 (stating that third element of promissory estoppel is substantial reliance by *promisee* to his detriment); *English*, 660 S.W.2d at 524 (same). "A plaintiff asserting promissory estoppel must show an actual promise that is sufficiently specific and definite so that it would be reasonable and justified for *the promisee* to rely on it as a commitment to future action." *Ogle v. Hector*, No. 03-16-00716-CV, 2017 Tex. App. LEXIS 7210, at *5 (Tex. App.—Austin Aug. 2, 2017, pet. denied) (mem. op.) (emphasis added) (internal quotations omitted); *accord Davis v. Texas Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Gano argues that the sole purpose of Dimas Diaz's promise to guarantee the Lease was to induce "all parties" to the transfer of the Lease and that "all parties" relied on to their detriment. However, the summary judgment record reflects that the promise to guarantee the Lease contained in the December 30, 2009 letter was made to the landlord in return for the landlord's agreement to the Lease transfer, a fact that Gano does not dispute. Further, even if the promise had

16

been made to Gano, he could not have reasonably relied on it in light of the language in the Purchase Agreement prohibiting him from extending the Lease without obtaining a release of the guaranty. *See Ellen v. F.H. Partners, LLC*, No. 03-09-00310-CV, 2010 Tex. App. LEXIS 9540, at *11 (Tex. App.—Austin Dec. 1, 2010, no pet.) (mem. op.) (stating promissory estoppel requires "actual, substantial, and reasonable reliance by the promisee"). Thus, Gano has not established or raised a fact issue as to the element of *reasonable* reliance by *the promisee* to his detriment. *See* Tex. R. Civ. P. 166a(c); *Stromboe*, 102 S.W.3d at 686 n.25; *English*, 660 S.W.2d at 524.

**Waiver**

As his last affirmative defense, Gano argues that the Diazes have waived their right to "any benefit they had." Yet again, Gano presents arguments concerning only his failure to cancel the guaranty and not his failure to indemnify the Diazes and has waived this issue as to the indemnify provision. *See* Tex. R. App. P. 38.1(i). Further, to the extent waiver of the guaranty claim affects the Diazes' claim for breach of the indemnity agreement, Gano has not shown that such waiver occurred.

"Generally, 'waiver' consists of the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Paxton v. City of Dallas*, 509 S.W.3d 247, 262 (Tex. 2017) (quoting *In re Nationwide Ins. Co.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding)). A defendant may establish waiver by demonstrating that the plaintiff (1) expressly renounced a known right; (2) was silent or took no action for so long as to show the intent to yield a known right; or (3) knowingly possessed a right and acted in a manner that misled the defendant into believing that a waiver occurred. *Avasthi & Assocs., Inc. v. Dronamraju*, No. 01-11-00786-CV,

2012 Tex. App. LEXIS 10511, at *18–19 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, pet. denied) (mem. op.).

Gano contends that the Diazes have demonstrated all three forms of waiver. First, he asserts that the Diazes renounced the right to any benefit they had when Dimas Diaz signed the "unconditional" guaranty. Second, Gano argues that the Diazes admitted that they were aware of the date on which the original term of the lease ended and that after that date, Gano was still operating out of the premises, but they failed to request any proof that the guaranty was terminated. Finally, Gano contends that the guaranty and the Diazes' failure to confirm its cancellation led him to believe the Diazes had no issue concerning the lack of cancellation. We do not find these arguments persuasive. The guaranty itself cannot act as a renunciation of the Diazes' separate agreement with Gano about cancellation of the guaranty agreement. Nor does the record contain any other evidence that the Diazes renounced their right to cancellation of the guaranty agreement upon renewal of the lease. In addition, the summary judgment evidence showed that no affirmative action on the part of the Diazes was required to trigger Gano's obligation to terminate the guaranty upon renewal or in response to the termination; rather, under the express language of section 6.5, Gano was obligated to cancel the guaranty upon any renewal of the Lease or obtain approval for renewal without cancellation from the Diazes. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12; *Plainsman Trading*, 898 S.W.2d at 789. The evidence further showed that Gano told Dimas Diaz that Gano had obtained a "new lease"—not that he had agreed to a renewal of the Lease—which could have reasonably led the Diazes to believe (1) that the guaranty had been eliminated and replaced by some other guaranty or arrangement in the language of the new lease, (2) that no approval of an extension

18

without termination of the guaranty was required, and (3) that no violation of the agreement to terminate the guaranty had occurred. Accordingly, the existence of the guaranty and the fact that the Diazes' did not "confirm" its cancellation could not reasonably have mislead Gano into believing that they were aware of the renewal in the absence of cancellation of the guaranty. We conclude that Gano has not established or raised a fact issue as to his affirmation defense of waiver.[2] *See* Tex. R. Civ. P. 166a(c); *Dronamraju*, 2012 Tex. App. LEXIS 10511, at *18–19.

Having concluding that Gano has not established or created a fact issue as to any of his affirmative defenses, we further conclude that the trial court did not err in denying Gano's motion for summary judgment as to the Diazes' claim for breach of the indemnity provision and in granting the Diazes' motion for summary judgment. Accordingly, we overrule Gano's first issue and his second issue as to the claim for breach of the indemnity provision.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed: June 28, 2018

---

[2] Gano admits that waiver is his "weakest defense" and contends only that he has raised a fact issue on that defense, not that he has conclusively established it.

19