

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GARDNER ENERGY CORPORATION; BAJA ENERGY, LLC, PANDALE LAND & MINERALS COMPANY LLC, HEDBERG FAMILY LIMITED PARTNERSHIP, and PESCADOR PARTNERS, LTD., | § § § § § | No. 08-23-00140-CV Appeal from the 143rd Judicial District Court |
| Appellants, | § | of Reeves County, Texas |
| v. | § | (TC#21-08-24090-CVR) |
| McNEIL, McNEIL, & HOLT, BILLY McNEIL and JEANNE HOLT, both individually and as Executors of the Estate of GLENDA McNEIL, Deceased, JIMMY McNEIL CATTLE COMPANY, and WESTWAY RANCHES, LLC, | § § § § | |
| Appellees. | § | |

# **MEMORANDUM OPINION**

Appellants and Appellees each own an undivided 1/2 mineral interest in certain Reeves

County property burdened by the State's 1/16th non-participating royalty interest. In ruling on the

parties' cross-motions for summary judgment, the trial court found that only the Appellants were

to bear the burden of the State's interest based on its construction of a 1976 mineral deed. We conclude, however, that the language in the deed indicates the burden of the State's interest is to be shared proportionately by all of the mineral interest owners. We therefore reverse the trial court's order and remand for further proceedings as explained below.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The mineral interests

In 1951, the State of Texas conveyed the subject property (the Property) by "patent" to Earl Ellis, with the State reserving a 1/16th non-participating royalty interest (NPRI) in case of production on the Property.[1] In 1964, L.D. McNeil became the successor-in-interest to Ellis's ownership interest in the Property. The parties agree that each of the deeds in McNeil's chain of title indicated the conveyances were subject to the State's 1/16th NPRI.

In 1976, L.D. McNeil and his wife (the Grantors) conveyed by mineral deed an undivided 1/2 mineral interest in the Property to Jimmy Don McNeil, Floyd McNeil, and William C. McNeil (the McNeil Grantees), while retaining a 1/2 mineral interest in the Property (the Deed). Through additional transactions, Appellants (the Gardner Group) became the successors-in-interest to the Grantors' retained undivided 1/2 mineral interest in the Property, and the Appellees (the McNeil Group) became the successors-in-interest to the undivided 1/2 mineral interest the Grantors conveyed to the McNeil Grantees.

Appellants and Appellees have executed oil and gas leases on the Property, which call for them to be paid 1/4th of the proceeds from production as their royalty interest. The parties agree the State's NPRI entitles it to a 1/16th share of proceeds from the production, and the State's share

---

[1]The State's NPRI exists because the subject property was originally on public school lands owned by the State of Texas. The State Legislature, through the 1931 Sales Act, required the State to reserve a 1/16th non-participating royalty interest when selling any portions of such lands. *See Wintermann v. McDonald*, 102 S.W.2d 167, 173 (Tex. 1937) (discussing Act's requirements).

2

was allocated between the two groups in accordance with their proportionate interests until 2018. However, in 2018, one of the lessees requested a new title opinion, which stated that 100% of the State's NPRI should be allocated against the Gardner Group's share of lease royalties from production, with none allocated against the McNeil Group's share. Since then, the entire burden of the State's NPRI has been allocated against the Gardner Group's royalty interest.

## B. The Gardner Group's lawsuit

On August 16, 2021, the Gardner Group filed a lawsuit against the McNeil Group seeking a declaratory judgment that the burden of the State's NPRI is to be borne by both groups' share of production in proportion to their respective interests. The Gardner Group also sought damages for "Money Had and Received and/or Unjust Enrichment" for the allegedly erroneous apportionment of the State's NPRI since 2018. The McNeil Group denied the allegations.

The Gardner Group thereafter filed a motion for partial summary judgment, seeking a declaratory judgment that the State's NPRI was to be "borne by all mineral owners proportionate to their respective mineral interests." In its motion, the Gardner Group argued the Deed, while not expressly referring to the State's NPRI, reflected the Grantors' intent that the burden of the State's NPRI was to be allocated proportionately between the Grantors' reserved 1/2 mineral interest and the 1/2 interest they conveyed to the McNeil Grantees. The McNeil Group opposed the motion and filed a cross-motion for summary judgment, arguing that because the Deed did not expressly refer to the State's NPRI, the conveyance to the McNeil Grantees "was not made subject to the State['s] NPRI." The McNeil Group argued the burden remained entirely with the Grantors' 1/2 reserved interest, which is now owned by the Gardner Group, and therefore, only the Gardner Group's interest is burdened by the State's NPRI. The McNeil Group sought dismissal of the lawsuit in its entirety.

Following a hearing and supplemental briefing, the trial court issued a final judgment in favor of the McNeil Group, finding that the McNeil Group "shall bear no portion of the burden of the State of Texas's 1/16th non-participating royalty interest in the Property (the "State NPRI"), and that the burden of the State NPRI shall be apportioned to [the Gardner Group] and their respective heirs, executors, successors and assigns." The trial court ruled that the Gardner Group take nothing and dismissed the lawsuit with prejudice. This appeal followed.

## ISSUE ON APPEAL

On appeal, the Gardner Group contends the trial court erred in denying its partial motion for summary judgment and in granting the McNeil Group's cross-motion. At issue is the interpretation of the Deed and whether the Grantors intended to convey the proportionate burden of the State's NPRI to the McNeil Grantees or whether they intended the entire burden to be allocated to their reserved 1/2 interest. As explained below, we conclude the Deed allocates the burden of the State's NPRI proportionately to both parties and their successors, and the trial court therefore erred in granting summary judgment in favor of the McNeil Group.

## STANDARD OF REVIEW

We review the grant of a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When, as here, opposing parties file cross summary judgment motions on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions of law presented, and if we determine that the trial court erred, we render the judgment the trial court should have rendered. *Id.* at 248.

Here, because the parties do not argue the Deed was ambiguous and we agree it is not, we treat the Deed interpretation as a question of law, which we review de novo. *See Luckel v. White*,

4

819 S.W.2d 459, 461 (Tex. 1991) ("The construction of an unambiguous deed is a question of law for the court"); *see also Greer v. Shook*, 503 S.W.3d 571, 582 (Tex. App.—El Paso 2016, pet. denied) (issues involving deed construction raised questions of law that we review de novo) (citing *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002)). Our primary duty is to ascertain the intent of the parties from the four corners of the instrument. *U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 151 (Tex. 2018) (citing *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017)). Because we use a holistic approach in determining the parties' intent, we examine the entire deed, seeking to harmonize and give effect to all of its provisions, such that no provision is rendered meaningless. *See U.S. Shale*, 551 S.W.3d at 151; *see also Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016) (reaffirming the court's "commitment to a holistic approach aimed at ascertaining intent from all words and all parts of the conveying instrument"). In discerning the parties' intent, "words and phrases must be construed together and in context, not in isolation." *Hysaw*, 483 S.W.3d at 13 (citing *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995)). Words and phrases generally bear their ordinary meaning unless the context supports a technical meaning or a different understanding. *Id.* (citing *In re Office of the Att'y Gen. of Texas*, 456 S.W.3d 153, 155–56 (Tex. 2015)). "Similarly, apparent inconsistencies or contradictions must be harmonized, to the extent possible, by construing the document as a whole." *Id.* (citing *Luckel*, 819 S.W.2d at 462).

The Texas Supreme Court has "'incrementally cast off rigid, mechanical rules' and 'warned against quick resort to . . . default or arbitrary rules' in favor of determining intent by 'conducting a careful and detailed examination of a deed in its entirety, rather than applying some default rule that appears nowhere in the deed's text.'" *Piranha Partners*, 596 S.W.3d at 746 (quoting *Wenske*, 521 S.W.3d at 792). In following this guidance, our Court has expressly rejected

"rules of construction which give priority to certain clauses over others or require the use of so-called 'magic words.'" *WTX Fund, LLC v. Brown*, 595 S.W.3d 285, 293 (Tex. App.—El Paso 2020, pet. denied) (quoting *Wenske*, 521 S.W.3d at 794).

**ANALYSIS**

#### A. The granting clause

We start with the Deed's granting clause, which states the Grantors were conveying "unto [the McNeil Grantees . . .] an undivided one-half (1/2) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" the Property. The parties agree the granting clause did not refer to the State's NPRI or expressly address the allocation of the State's NPRI burden. The McNeil Group argues the failure to mention the State's NPRI reflects the Grantors' intent to convey an undivided 1/2 mineral interest in fee simple in the Property, unburdened by the NRPI.

In support of its position, the McNeil Group relies primarily on our sister court's holding in *Selman v. Bristow*, 402 S.W.2d 520, 522–23 (Tex. App.—Tyler 1966, writ ref'd n.r.e.). There, the plaintiffs purchased property subject to a previously reserved 1/8th royalty interest (the reserved royalty). *Id.* at 522–23. The plaintiffs then conveyed the property to the defendant, reserving a 1/4th mineral interest for themselves. *Id.* A question later arose regarding whether the plaintiffs intended to convey the burden of the reserved royalty to the defendant in proportion to his interest, or whether the plaintiffs intended to convey a 3/4th mineral interest to the defendant in fee simple, unburdened by the reserved royalty. *Id.* at 522. The court of appeals held the deed conveyed an unburdened fee simple interest in the property, finding the express language in the deed's granting clause "purported to convey all the interest in the land except the reserved 1/4th interest in the minerals." *Id.* at 522. And the court concluded that without a "reservation clause"

6

addressing how the reserved royalty was to be allocated, the "deed clearly implies a grant of all of the surface and a full 3/4ths of the mineral estate." *Id.*

Here, the McNeil Group finds it significant that, as in *Selman*, there is no reservation clause in the Deed describing how the burden of the State's NPRI is to be allocated. The McNeil Group therefore contends the Deed should be similarly interpreted to convey to them a full, undivided 1/2 mineral interest in fee simple unburdened by the State's NRPI. If we were to consider the granting clause in complete isolation, we might be persuaded by the McNeil Group's position. However, unlike the deed in *Selman*, the Deed contains a "subject-to" clause limiting the nature of the conveyance.

### B.   The subject-to clause

The 1976 Deed's subject-to clause states:

> This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease heretofore executed and now of legal record; it being understood and agreed that said Grantee shall have, receive and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue thereunder from and after the date hereof, precisely as if the Grantee herein had been at the date of making said lease and/or leases the owner of a similar undivided interest in and to the lands above described and none other and Grantee one of the lessors therein.

A subject-to clause in a deed plays a significant role in determining the grantor's intent. The Texas Supreme Court has recognized that the phrase "subject to" as used in its ordinary sense means "subordinate to, subservient to or limited by." *Wenske*, 521 S.W.3d at 796 (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. App.—Dallas 1950, writ ref'd)). Thus, a subject-to clause in a deed serves to limit "the rights granted to a party." *See Crow v. Lookadoo*, No. 04-17-00338-CV, 2018 WL 4096400, at *7 (Tex. App.—San Antonio Aug. 29, 2018, no pet.) (mem. op.) (citing *Averyt v. Grande, Inc.*, 717 S.W.2d 891, 894 (Tex. 1986) (recognizing that a subject-to clause in a deed "does limit the estate granted and warranted")).

7

The *Wenske* Court examined the role a deed's subject-to clause played in determining a grantor's intent in conveying property burdened by a third party's preexisting 1/4th NPRI. *Wenske*, 521 S.W.3d 791. The owners of the property (the Wenskes) sold a 55-acre parcel to the grantees (the Ealys), while reserving a 3/8ths mineral interest for themselves. *Id.* at 793. After the Wenskes and Ealys entered into oil-and-gas leases providing for a royalty on production, a dispute arose regarding whether the parties were to share the burden of the pre-existing NPRI or whether it only burdened the Ealys' interest. The Texas Supreme Court found it significant that, although the deed's granting clause did not address the NPRI, the deed contained a subject-to clause providing the grant was "subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty." *Id.* at 796. In turn, the "Reservation" clause referenced the Wenskes' 3/8ths mineral interest reservation, while the "Exceptions" clause identified the deed in which the third party had reserved her NPRI and made "reference" to that deed "for all purposes." *Id.* at 796. In addition, the deed's mineral-reservation paragraph concluded as follows: "If the mineral estate is subject to existing production or an existing lease, the production, the lease and the benefits from it are allocated in proportion to ownership in the minerals." *Id.* at 798. According to the court, the deed therefore put the Ealys "on notice that the entirety of the minerals [were] subject to the outstanding . . . NPRI," and the NPRI burden was to be allocated in proportion to the parties' respective interests. *Id.* at 798.

In reaching its conclusion regarding the deed language, the "principles of oil-and-gas law inform[ed] [the *Wenske* Court's] interpretation." *Id.* at 797. Specifically, it recognized that, in general, a "conveyance of an interest in the minerals in place carries with it by operation of law the right to a corresponding interest in the royalty." *Id.* (citing *Woods v. Sims*, 273 S.W.2d 617, 621 (Tex. 1954); *Benge v. Scharbauer*, 259 S.W.2d 166, 169 (Tex. 1953) ("The fractional part of

the bonuses, rentals and royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest . . . .")). In turn, the court observed that a "severed fraction of the royalty interest—like the [third party's] NPRI—generally would burden the entire mineral estate because it necessarily limits the royalty interests attached to the underlying mineral interests." *Id.* at 797; *see also Pich v. Lankford*, 302 S.W.2d 645, 650 (Tex. 1957) (recognizing default rule that a reserved royalty interest "would be carved proportionately from the two mineral ownerships"); *Brooke-Willbanks v. Flatland Mineral Fund, LP*, 660 S.W.3d 559, 565 (Tex. App.—Eastland 2023, no pet.) (recognizing same principle). The court, however, was quick to acknowledge that parties to a deed are "free to contract" for a different result and are therefore free to allocate the burden of a reserved royalty interest in any way that "suits them." *Wenske*, 521 S.W.3d at 797. However, the court was clear that if parties "want their agreement to operate differently from this basic principle of mineral conveyance . . . they should plainly and in a formal way express that intention." *Id.* (citing *Benge*, 259 S.W.2d at 169) (internal quotation marks omitted). Because it saw "no expression of such intent, plain or not, in the deed here[,]" the court concluded the parties intended for the pre-existing NPRI to be allocated to all mineral interest owners in proportion to their respective interests. *Id.*

Here, as in the deed in *Wenske*, there is no expression in the Deed that would lead us to conclude the parties sought to deviate from the general principle that a severed royalty interest, such as the State's NPRI, is to be allocated proportionately to all mineral interest owners. To the contrary, the Deed's subject-to clause supports a finding that the Grantors intended to convey the burden of the State's NPRI to the McNeil Grantees in proportion to their respective interests because it provides the conveyance was subject to "any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease." It further stated that the McNeil Grantees were

9

only entitled to receive the royalties and other benefits that may accrue under those leases "precisely as if the Grantee[s] herein had been at the date of making said lease and/or leases the owner of a similar undivided interest in and to the lands above described and none other and Grantee[s] one of the lessors therein." This language effectively has the McNeil Grantees step into the Grantors' shoes under the terms of the existing leases, entitling them to receive the same royalties and benefits as the Grantors were receiving at the time of the conveyance. It is undisputed that, as of the date of the conveyance, the Grantors' right to receive royalties was burdened by the State's NPRI. Accordingly, the subject-to clause confirms that the McNeil Grantees' rights would also be burdened by the State's NPRI.

The McNeil Group argues, though, that unlike the deed in *Wenske*, nowhere did the Deed expressly mention the State's NPRI. And, they argue, absent a reference to the State's NPRI, we should not conclude the parties intended the burden of the NPRI to pass to the McNeil Grantees. *Id.* We disagree.

The Eastland Court of Appeals rejected a similar argument in finding a deed conveyed the burden of a reserved royalty interest despite making no express mention of the same. *Brooke-Willbanks*, 660 S.W.3d 559. In that case*,* the grantor owned an "undivided 144-acre mineral interest" in property burdened by two previously reserved NPRIs. *Id.* at 561. The grantor conveyed by deed an undivided fee simple mineral interest in 72 acres, which included "the right to receive royalty payments therefrom." *Id.* at 561, 564. A dispute later arose regarding how to allocate the burden of the reserved NPRIs; the grantee argued the grantor must have intended for the property to pass to him in fee simple, unburdened by the NPRIs, because the deed did not refer to the reserved NPRIs. *Id.* at 566. Disagreeing, the court followed *Wenske* and examined all provisions in the parties' deed to ascertain the grantor's intent. *Id.* at 564. And it found that, even though the

deed made no mention of the NPRIs, the deed's subject-to clause demonstrated the grantor's intent to allocate the burden of the reserved NPRIs to both parties in proportion to their respective interests. *Id.* at 565–67.

Similar to the subject-to clause in the Deed here, the subject-to clause in *Brooke-Willbanks* provided the conveyance was "made subject to the terms of any valid and subsisting oil, gas and other mineral lease or leases," and the grantors were conveying to "the Grantee, their heirs, successors and assigns, the above stated interest of Grantor's interest in and to the rights, rentals, royalties and other benefits accruing or to accrue under said lease or leases from the above described land." *Id.* at 561–62. In *Brooke-Willbanks*, the property was subject to an oil and gas lease at the time of the conveyance, and the court concluded the subject-to clause clarified the grantee's entitlement to receive only the same interest the grantor had to royalties under the existing lease. *Id.* at 565–66. And since the grantor's mineral interest was burdened by the reserved NPRIs at that time, the court held the parties intended the grantee's interest would be "burdened by the previously reserved NPRIs to the same extent that [the grantor] was burdened prior to this conveyance." *Id.* at 566.

Here, too, though the Deed did not expressly mention the State's NPRI, we find the subject-to clause confirms that the McNeil Grantees are subject to the property's existing leases, entitling them only to the royalty interest to which the Grantors were entitled. And we find this reference to the Grantors' right to receive royalties under the existing leases sufficient to put the McNeil Grantees on notice that their rights were being limited thereby. "A purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by any instrument that forms an essential link in the chain of title under which he claims." *See Posse Energy, Ltd. v. Parsley*

11

*Energy, LP*, 632 S.W.3d 677, 696 (Tex. App.—El Paso 2021, pet. denied) (citing *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982)).

> "The rationale of the rule is that *any* description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained."

*Westland*, 637 S.W.2d 903, 908 (Tex. 1982) (emphasis in original) (quoting *Loomis v. Cobb*, 159 S.W. 305, 307 (Tex. App.—El Paso 1913, writ ref'd)). The Deed's reference to existing leases put the McNeil Grantees on notice of the same, at which point they could have made inquiries and discovered the burden of the State's NPRI.

### C. The warranty and further-assurances clauses

Finally, we reject the McNeil Grantees' argument that the Deed's warranty and further-assurances clauses compel a different result. The Deed's warranty clause provides the McNeil Grantees were to

> HAVE AND TO HOLD The above described property and easement with all and singular the rights, privileges and appurtenances thereunder or any wise belonging to the said Grantee[s] herein [and] their . . . successors . . . forever, and Grantor[s] do hereby bind themselves [and their] successors . . . to warrant and forever defend all and singular the said property unto the said Grantee[s] herein[,] [and their successors] . . . against every person whomsoever lawfully claiming or to claim the same or any part thereof.

In arguing that the warranty clause demonstrates an intent to convey a fee simple interest to the McNeil Grantees unburdened by the State's NPRI, the McNeil Group relies on our sister court's holding in *Farm & Ranch* for the proposition that "[a] general warranty deed conveys all of the grantor's interest unless there is language in the instrument that clearly shows an intention to convey a lesser interest." *See Farm & Ranch Investors, Ltd. v. Titan Operating, L.L.C.*, 369 S.W.3d 679, 681 (Tex. App.—Fort Worth 2012, pet. denied) (citing *Reeves v. Towery*, 621 S.W.2d

12

209, 212 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.); *Waters v. Ellis*, 312 S.W.2d 231, 234 (Tex. 1958)). We do not disagree with that proposition, but as stated above, the Deed does in fact demonstrate the Grantors intended to limit the conveyance by reserving a 1/2 mineral interest for themselves and clarifying in the subject-to clause that both the conveyed and reserved interests were burdened by the State's NPRI. And the Deed's warranty clause only purported to warrant the "above described" property interests being conveyed to the McNeil Grantees.

As the *Farm & Ranch* Court recognized, a "warranty clause does not convey title nor does it determine the character of the title conveyed[, instead] it warrants that the same estate or any right, title, or interest therein has not been conveyed to any person other than the grantee and that the property is free from encumbrances." *Farm & Ranch*, 369 S.W.3d at 684 (quoting *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 811 (Tex. App.—Eastland 2006, pet. denied) (internal citations omitted)). In other words, "[a] warranty clause in a conveyance, either general or limited, is no part of the conveyance proper; it neither strengthens, enlarges, nor limits the title conveyed, but is a separate contract on the part of the grantor to pay damages in the event of failure of title." *See Chicago Title Ins. Co. v. Cochran Investments, Inc.*, 602 S.W.3d 895, 902 (Tex. 2020). Thus, when, as here, a subject-to clause limits the nature of the grantor's conveyance, it also serves as "a limitation of the warranty." *Farm & Ranch*, 369 S.W.3d at 683 (citing *Wright v. E.P. Operating L.P.*, 978 S.W.2d 684, 688 (Tex. App.—Eastland 1998, pet. denied)). Such a subject-to clause limitation protects a grantor from a breach-of-warranty claim, as it not only limits the nature of the conveyance itself, but also limits the grantor's responsibilities under a warranty clause. *See Wenske*, 521 S.W.3d at 796–98 (recognizing that a mineral deed's subject-to clause that limits a conveyance may be viewed as expressing an intent "to protect a grantor against a claim for breach of warranty when some mineral interest is already outstanding"). Accordingly,

13

the Deed's warranty clause does not, and cannot, expand the nature of the conveyance to the McNeil Grantees.

We reach a similar conclusion regarding the Deed's further-assurance clause. The further-assurance clause states the "grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted[.]" The McNeil Group argues the Deed's further-assurance language reflects the Grantors' intent to ensure the McNeil Grantees received the "full benefits associated with owning the 1/2 mineral interest conveyed through the 1976 Deed, including the full right to receive 1/2 of the royalties stated therewith." We disagree. This clause only assures the McNeil Grantees that they would have the full right to enjoy the "rights herein granted," which as set forth above, were limited. As is the case with the warranty clause, we conclude the further-assurance clause did not expand the interests the McNeil Grantees were entitled to receive under the Deed.

## CONCLUSION

The only interpretation of the Deed harmonizing all of its provisions is that the Grantors intended to convey to the McNeil Grantees a 1/2 mineral interest burdened by the State's NPRI in proportion to its interest.

We therefore conclude the trial court erred in granting the McNeil Group's summary judgment motion and in denying the Gardner Group's partial summary judgment motion. We reverse the trial court's judgment and render judgment in favor of the Gardner Group, granting its request to declare that the burden of the State's NPRI is to be allocated proportionately to all mineral interest owners in accordance with their respective interests. We remand to the trial court for further proceedings on the Gardner Group's claim for "Money Had and Received and/or Unjust Enrichment."

14

LISA J. SOTO, Justice

December 27, 2023

Before Alley, C.J., Palafox, and Soto, JJ.